Filed 10/11/19; Certified for Publication 10/30/19 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.S., a Person Coming Under the Juvenile Court Law. | D075278 |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>T.S.,<br><br>    Defendant and Appellant. | (Imperial County<br>Super. Ct. No. JJP03850) |

APPEALS from orders of the Superior Court of Imperial County, William D. Lehman, Judge. Reversed and remanded with directions.

Tungsten Legal and Elena S. Min, under appointment by the Court of Appeal, for Defendant and Appellant.

Henderson and Ranasinghe and Kelly Ranasinghe, for Plaintiff and Respondent.

In this Welfare and Institutions Code section 300[1] dependency proceeding involving M.S., a minor, T.S., her mother (Mother), appeals an order at M.S.'s jurisdiction and disposition hearing denying Mother reunification services based on the juvenile court's finding that Mother's whereabouts were unknown pursuant to section 361.5, subdivision (b)(1), and setting a section 366.26 permanency planning hearing. Mother also appeals the court's subsequent order at the section 366.26 hearing terminating her parental rights. On appeal, Mother contends: (1) there is insufficient evidence to support the court's finding at the jurisdiction and disposition hearing that her whereabouts were unknown within the meaning of section 361.5, subdivision (b)(1), and, based thereon, it erred in denying her reunification services; and (2) the court also erred at the jurisdiction and disposition hearing by setting a section 366.26 hearing after denying reunification services to her under section 361.5, subdivision (b)(1), and by subsequently terminating her parental rights at the section 366.26 hearing. Because, as explained below, we agree with Mother's contentions, we reverse the orders and remand the matter to the juvenile court with directions that it, inter alia, order that Mother be provided with a minimum of six months of reunification services.

---

[1]     All statutory references are to the Welfare and Institutions Code.

FACTUAL AND PROCEDURAL BACKGROUND

In 1993, Mother was born in Los Angeles. In July 2017, Mother gave birth to M.S. at an El Centro hospital. At the time of M.S.'s birth, both Mother and M.S. tested positive for amphetamines. A subsequent test showed that M.S. was also positive for methamphetamines. The Imperial County Department of Social Services (Department) received a report regarding Mother and M.S.'s positive amphetamines tests. Mother told a Department social worker that D.V. (Father) was M.S.'s father and the father of her three other children. Mother stated she had a seven-year relationship with Father, but did not live with him and was currently separated from him. Mother stated she was unemployed and lived with her parents and her three other children at her parents' Mexicali, Mexico house, which they owned mortgage-free. Mother apparently provided the social worker with the address of her Mexicali residence (Mexicali Address). Mother stated she had smoked methamphetamine since she was 23 years old, smoked it every three days, and had smoked it the day before M.S.'s birth. When E.A., Mother's friend, arrived to take Mother home, E.A. gave the social worker her telephone number at which Department could leave messages for Mother. M.S. was detained from Mother and placed in foster care.

The following day, Department left a message for Mother at the telephone number given it by E.A. Mother returned Department's call the next day and stated she wanted to be present at M.S.'s detention hearing and would require transportation services.

On August 4, Department filed a section 300 juvenile dependency petition for M.S., alleging she had suffered, or was at substantial risk of suffering, serious physical harm or illness as a result of the failure or inability of Mother to supervise or protect her adequately and by the inability of Mother to provide regular care for her due to Mother's substance abuse within the meaning of section 300, subdivision (b)(1). The petition also alleged Father's whereabouts were currently unknown and M.S. had been left without an adequate caregiver and provisions for support within the meaning of section 300, subdivision (g). On August 4, the juvenile court clerk served Mother with notice of the August 7 detention hearing by mailing a copy of the petition and notice to the Mexicali Address.

In its August 7 detention report, Department stated that on August 2 it sent an e-mail to Sistema para El Desarrollo de la Familia Integral (DIF) requesting that it "work jointly in reference to the current investigation with [Mother] as she stated that she resides in Mexicali, Mexico."[2] Department provided DIF with information regarding M.S.'s dependency proceeding, the Mexicali Address, and information regarding Mother's children. Also on August 2, Department called the Mexican Consulate to inquire about the procedures for conducting a home assessment for the family as Department needed to make contact and assess the safety and well-being of the other

---

[2]     DIF is a social services agency in Mexico. (*In re R.L.* (2016) 4 Cal.App.5th 125, 133, 147; *In re E.M.* (2012) 204 Cal.App.4th 467, 472, fn. 3 ["DIF is . . . a Mexican social services agency dealing with family matters."].)

three children who currently resided in Mexicali, Mexico. A Mexican Consulate representative informed Department that it needed to request a socio-economic study on the family in writing and to fax the request to the Consulate and it would then forward the request to DIF. On August 4, Department faxed its written request to the Mexican Consulate.

On August 7, the juvenile court held M.S.'s detention hearing. Mother appeared at the hearing and was appointed counsel to represent her. On the court's inquiry, Department confirmed that Mother had provided it with her parents' contact information. Mother's counsel asked that M.S. be placed with her maternal grandparents. On behalf of Mother, he denied the petition's allegations. After considering Department's detention report, the court found that Department had made a prima facie showing that M.S. is a child described under section 300 and that placement of M.S. in the parental home would be detrimental to her. It removed M.S. from parental custody, ordered Department to assess and evaluate her placement with relatives in Mexicali, and adopted all of the recommended findings and orders set forth in Department's detention report, including that reunification services be provided. Department was ordered to facilitate supervised visits by Mother with M.S. a minimum of three times per week. The court also noted that Mother had filed a form JV-140, which listed her mailing address as a postal box in Calexico, California. The court advised Mother to immediately notify it in writing if she changed her mailing address. The court then set a jurisdiction hearing for August 28.

Department served Mother with notice of the August 28 jurisdiction hearing by mailing a copy of the notice to the Mexicali Address. In its August 23 jurisdiction report, Department stated it had scheduled an interview with Mother at its office, but she called that day and stated she was running late. She did not show up for the interview. Department had since unsuccessfully attempted to contact her by telephone. Department's social worker had yet to contact Mother for the purpose of providing her with referrals for predisposition reunification services. Department recommended that the juvenile court find the petition's allegations were true and that M.S. was a child described under section 300, subdivisions (b) and (g). On August 28, the court vacated the scheduled jurisdiction hearing and instead set a Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA) hearing for September 13 to determine whether Mexico intended to take jurisdiction over the case.

Department served Mother with notice of the September 13 UCCJEA hearing by mailing a copy of the notice to the Mexicali Address. On September 13, the court held the UCCJEA hearing, spoke by telephone with a Mexicali family court judge, and found that that court would not be asserting jurisdiction over M.S.'s case. The juvenile court then asserted jurisdiction over the case and set a jurisdiction and disposition hearing for September 18.

On September 18, Department stated that it needed to serve M.S.'s parents by letters rogatory and requested that the court continue the jurisdiction and disposition

hearing until December 11. The court found good cause for the continuance and set the jurisdiction and disposition hearing for December 11.

Department served Mother with notice of the December 11 jurisdiction and disposition hearing by mailing a copy of the notice to the Mexicali Address. On December 11, Mother appeared with her counsel. Department's counsel noted her presence, stating:

> "Your Honor, [Mother] is present. Although I thought she resided in Mexicali, I guess [Mother] is present. I thought she was one of the parties for which we would need to effectuate service through the letters rogatory process. But she's present and has an attorney.
>
> "[Father], however, is -- the only information we have is that he's in Mexico. We don't even know where. We did send the letters rogatory request."

Department stated that it could not proceed with the jurisdiction and disposition hearing at that point despite Mother's presence because of its lack of information regarding Father. The court noted that Mother had made a general appearance in the case and was present at the hearing. Department requested a continuance of the jurisdiction and disposition hearing so that it could serve Father with letters rogatory. After Department represented that it had been taking three to six months to effect service by letters rogatory, the court continued the jurisdiction and disposition hearing until June 5, 2018

(i.e., a date almost six months later).[3]  The court personally gave Mother notice of that hearing and ordered her to return then.  Mother confirmed that she was to return on the date of the continued hearing.  Mother stated that Father was currently living with her and their other three children at her parents' house at the Mexicali Address, but Father did not have the right to cross the border for the continued hearing.  Mother confirmed the accuracy of the Mexicali Address that Department had.[4]

On May 14, 2018, Department served Mother with notice of the June 6 jurisdiction and disposition hearing by mailing a copy of the notice to the Mexicali Address.  On May 25, Department again served Mother with notice of the June 6 jurisdiction and disposition hearing by mailing a copy of the notice to the Mexicali Address, but that May 25 notice contained the following statement that had not been contained in the May 14 notice: "[Department] will seek a Court Order pursuant to [section] 361.5(b)(1) that Family Reunification services will not be provided to [Mother]. This will result in immediate permanency through termination of parental rights and a Selection and Implementation hearing under [section] 366.26."

---

[3]    In April 2018, the court continued the jurisdiction and disposition hearing from June 5 to June 6.

[4]    Despite Mother's personal appearance at the hearing, neither Department nor the court raised the issue of the predisposition reunification services that the court ordered at the August 7, 2017, detention hearing to be provided to Mother.

In its May 30 jurisdiction and disposition report, Department stated that Mother had failed to cooperate with it to address the issues that led to M.S.'s removal. Department stated that it had made diligent efforts to maintain communication with Mother, "to no avail." It stated Mother had been inconsistent in participation and visitation with M.S. Department asserted that it had made reasonable efforts to provide services to Mother, Father, and M.S. with the purpose of safely returning M.S. home but that Mother and Father had not made themselves available to Department.[5] Department further asserted: "[Mother's] and [Father's] whereabouts continue to remain unknown; thus, they have not been available to provide additional statements to [it.]" In support of its assertion that Mother's whereabouts were unknown, Department attached a declaration of due diligence by social worker Jocelyn Mejia regarding her efforts to locate Mother.

In her declaration, Mejia stated that on September 17, 2017, she searched a statewide database and found a telephone number that she called and spoke to a female. That female would not identify herself, but stated she knew Mother and that the telephone number was not Mother's current number. The female did not have another number for Department to contact Mother. The female stated she had not seen Mother recently, but kept in contact with her through Facebook. Mejia stated that on May 22,

---

[5]     In particular, Department asserted it had referred Mother for outpatient drug and alcohol treatment, counseling, and parenting classes. However, the record does not show that Department made such referrals either in person or by mailing the referrals to Mother at the Mexicali Address or that Department contacted DIF and arranged the provision of those services to Mother through DIF near her residence in Mexicali, Mexico.

2018, she called another telephone number and spoke to E.A., who identified herself as Mother's in-law. E.A. stated she had seen Mother the day before and frequently saw her. However, E.A. stated she did not have any contact information for Mother. Mejia gave E.A. a message with her contact information and asking Mother to call her. On May 30, Mejia called another telephone number, but was unable to leave a message because a recording advised her "the number was out of service range." On May 30, Mejia "contacted" (which we presume means "called") the Imperial County jail and was informed that no one with Mother's name was in its custody. On May 30, Mejia also "contacted" the Mexicali, Mexico jail, but received no response. On May 30, Mejia also "conducted a search" for Mother at three Mexicali, Mexico hospitals and was informed that no one with Mother's name was currently admitted or hospitalized at those hospitals.[6] Based on her attempts to locate Mother, Mejia asserted on behalf of Department that it had exercised due diligence in attempting to locate Mother.

In its jurisdiction and disposition report, Department recommended, inter alia, that the juvenile court find, by clear and convincing evidence, that Department had exercised "a reasonably diligent search to locate[] and contact [Mother], but [had] been unable [to] locate [Mother]." Department also recommended that the court find, by clear and convincing evidence, that "the whereabouts of [Mother] are unknown." Based thereon,

---

6    Absent any information in the record indicating otherwise, we presume that Mejia's "search" for Mother at the three hospitals consisted of telephone calls to those hospitals rather than physical visits to them.

10

Department recommended that the court deny reunification services to Mother pursuant to section 361.5, subdivision (b)(1). Department further recommended that the court set a section 366.26 hearing for implementation of a permanent plan for M.S.

On June 6, the juvenile court held the jurisdiction and disposition hearing. Mother was not present, but was represented by her counsel. The court stated that it had read and considered Department's jurisdiction and disposition report. The court made the findings recommended by Department in its report, including jurisdictional findings that the allegations in the petition were true and M.S. was a child described under section 300, subdivisions (b) and (g), and dispositional findings that Department had made reasonable efforts to eliminate the need for M.S.'s removal from the home and made reasonable efforts to return her to a safe home through the provision of reasonable services. Importantly for this case, the court further found, by clear and convincing evidence, that: (1) Department had "exercised a reasonably diligent search to locate[] and contact" Mother, but was unable to locate her; and (2) the whereabouts of Mother were unknown. The court declared M.S. a dependent of the court, removed her from parental custody, and placed her in Department's custody. M.S. was to remain in her current foster home until a favorable relative home was identified. The court denied reunification services to Mother under section 361.5, subdivision (b)(1), because her whereabouts were unknown. The court then set a section 366.26 hearing for December 5, 2018, for implementation of a permanent plan for M.S.

11

On June 29, Mother visited with M.S., apparently under Department's supervision. Department reported that Mother played and interacted well with M.S. during the visit. At that visit, Department personally served Mother with notice of the section 366.26 hearing scheduled for December 5. The notice listed Mother's address as the Mexicali Address and stated that Department recommended termination of her parental rights and implementation of a permanent plan for M.S.

On October 16, Mother visited with M.S., apparently under Department's supervision. Mother played with and took a photograph of M.S.

In its November 16 section 366.26 report, Department stated that Mother had sporadic visits with M.S. and summarized Mother's June 29 and October 16 visits with her. Department recommended that Mother's and Father's parental rights be terminated and that a permanent plan of adoption be selected for M.S. Department recommended that M.S. be adopted by her current foster parents with whom she had lived since August 2017. On November 16, Department served Mother with a copy of its section 366.26 report by mailing it to the Mexicali Address. Also on November 16, Department served Mother with notice of the December 5 section 366.26 hearing by mailing the notice to the Mexicali Address.

On December 4, M.S.'s court-appointed special advocate filed a report with the juvenile court stating that M.S. was doing well in her foster home and recommending that

she remain in her current placement, that Mother's and Father's parental rights be terminated, and that M.S. be adopted.

On December 5, the juvenile court held the section 366.26 hearing. Mother was not present, but was represented by her counsel. The court stated that it had read and considered Department's section 366.26 report. The court terminated Mother's and Father's parental rights and selected a permanent plan of adoption for M.S. The court set a six-month post-permanency review hearing for June 5, 2019.

On January 24, 2019, Mother filed a notice of appeal challenging the orders issued at the June 6, 2018, jurisdiction and disposition hearing and the December 5, 2018, section 366.26 hearing.[7] On June 5, we requested that the parties submit supplemental letter briefs on, inter alia, what the appropriate disposition should be if we were to conclude there is insufficient evidence to support the juvenile court's finding that Mother's whereabouts were unknown and it erred by denying reunification services to Mother pursuant to section 361.5, subdivision (b)(1), and erred by setting a section

---

[7]   Because, as the parties agree, the record on appeal does not show that Mother was advised by the court at the June 6, 2018, jurisdiction and disposition hearing or by mail thereafter of her right to file a writ to challenge its June 6, 2018 order, Mother can now appeal that order. (See, e.g., *In re Merrick V.* (2004) 122 Cal.App.4th 235, 248-249; *In re Athena P.* (2002) 103 Cal.App.4th 617, 625; *In re Cathina W.* (1998) 68 Cal.App.4th 716, 724-726.)

366.26 hearing.[8]  The parties submitted, and we have read and considered, their supplemental letter briefs filed in response to our request.

## DISCUSSION

### I

*Insufficient Evidence to Support Court's Finding That Mother's*
*Whereabouts Were Unknown under Section 361.5, subdivision (b)(1)*

Mother contends there is insufficient evidence to support the court's finding at the jurisdiction and disposition hearing that her whereabouts were unknown within the meaning of section 361.5, subdivision (b)(1), and, as a result, the court erred by denying her reunification services.

---

[8]    Specifically, we requested that the parties file supplemental letter briefs addressing the following issues:  1.  Assuming the Court concludes that there is insufficient evidence to support the juvenile court's finding at the jurisdiction and disposition hearing that Mother's whereabouts were unknown within the meaning of section 361.5, subdivision (b)(1), and its order denying reunification services based thereon, and that the juvenile court prejudicially erred at that hearing by setting a section 366.26 hearing, what should the appropriate disposition be in the specific circumstances of this case?  2.  In particular, should the juvenile court be directed on remand to, inter alia, grant, or consider granting, reunification services to Mother for a certain period (e.g., six months)?  3.  If so, do the due process or other rights of Mother as M.S.'s parent prevail over the 24-month limitation for reunification services under section 361.5, subdivision (a)(4)(A)? (See, e.g., *R.H. v. Superior Court* (2012) 209 Cal.App.4th 364, 371 [recognizing a parent's fundamental liberty interest in the care, custody, and control of his or her child under the Due Process Clause of the Fourteenth Amendment]; cf. *T.J. v. Superior Court* (2018) 21 Cal.App.5th 1229, 1257-1258 [directing juvenile court on remand to order agency to provide parent with additional period of reunification services not to exceed 24 months after child's removal].)

14

A

"The purpose of the California dependency system is to protect children from harm and to preserve families when safe for the child. [Citations.] The focus during the reunification period is to preserve the family whenever possible. [Citation.] Until services are terminated, family reunification is the goal and the parent is entitled to every presumption in favor of returning the child to parental custody. [Citations.] After reunification services are terminated, the focus is to provide the child with a safe, permanent home. [Citation.]" (*Tracy J. v. Superior Court* (2012) 202 Cal.App.4th 1415, 1423.)

"Family reunification services play a critical role in dependency proceedings. (§ 361.5; [citations].) At the dispositional hearing, the court [generally] is required to order the agency to provide child welfare services to the child and his or her parents. (§ 361.5, subd. (a).) Services 'may include the provision of a full array of social and health services to help the child and family and to prevent reabuse of children.' (§ 300.2.) Reunification services should be tailored to the particular needs of the family. [Citation.]" (*In re M.F.* (2019) 32 Cal.App.5th 1, 13.)

Section 361.5, subdivision (a), provides in pertinent part: "Except as provided in subdivision (b) . . . , whenever a child is removed from a parent's . . . custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother . . . ." Section 361.5, subdivision (a)(1), provides in pertinent part:

15

"Family reunification services, when provided, shall be provided as follows: [¶] . . . [¶] (B) For a child who, on the date of the initial removal from the physical custody of his or her parent or guardian, was under three years of age, court-ordered services shall be provided for a period of 6 months from the dispositional hearing as provided in subdivision (e) of Section 366.21, but no longer than 12 months from the date the child entered foster care, as provided in Section 361.49, unless the child is returned to the home of the parent or guardian."

"Section 361.5 and its various subdivisions govern the provision of reunification services. As a general rule, the juvenile court must provide reunification services when it removes a child from parental custody. (§ 361.5, subd. (a).) However, there are exceptions namely, the circumstances described in section 361.5, subdivisions (b)(1) through [(17)]. . . . [Section 361.5, subdivision (b)(1)] provides that '[r]eunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence . . . [¶] [t]hat the whereabouts of the parent . . . are unknown.' " (*In re Jonathan P.* (2014) 226 Cal.App.4th 1240, 1257.) Section 361.5, subdivision (b)(1), further provides: "A finding pursuant to this paragraph shall be supported by an affidavit or by proof that a reasonably diligent search has failed to locate the parent or guardian."

"If the juvenile court denies a parent reunification services under section 361.5, subdivision (b)(2) through [(17)], the juvenile court is authorized under section 361.5, subdivision (f) to set a section 366.26 hearing. (§ 361.5, subd. (f).) However, if the sole

16

basis of denial of services is the unknown whereabouts of the parent under section 361.5, subdivision (b)(1), the juvenile court must set a six-month review hearing.  [Citation.] The underlying intent is to provide a parent whose whereabouts are initially unknown but who desires reunification an opportunity to reunify if the parent's whereabouts become known within a reasonable period.  This intent is made apparent in section 361.5, subdivision (d) which provides:  'If reunification services are not ordered pursuant to paragraph (1) of subdivision (b) and the whereabouts of a parent become known within six months of the out-of-home placement of the child, the court shall order the social worker to provide family reunification services in accordance with this subdivision.' (§ 361.5, subd. (d).)"  (*In re Jonathan P.*, *supra*, 226 Cal.App.4th at pp. 1257-1258.)

B

An order denying reunification services is reviewed for substantial evidence.  (*In re M.R.* (2017) 8 Cal.App.5th 101, 108; *In re Harmony B.* (2005) 125 Cal.App.4th 831, 839.)  Substantial evidence is not synonymous with any evidence.  (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 228.)  To be substantial, the evidence must be of ponderable legal significance and must be reasonable in nature, credible, and of solid value.  (*Ibid*.) The reviewing court must review the evidence in the light most favorable to the juvenile court's findings and draw all reasonable inferences from the evidence to support those findings.  (*In re M.R.*, *supra*, at p. 108.)  The reviewing court cannot reweigh the evidence.  (*In re F.S.* (2016) 243 Cal.App.4th 799, 813.)  On appeal, the appellant bears

17

the burden of showing an order or finding is not supported by substantial evidence. (*In re M.R.*, *supra*, at p. 108; *In re Dakota H.*, *supra*, at p. 228.)

Interpretation of a statute is a question of law, subject to de novo review on appeal. (*S.V. v. Superior Court* (2017) 13 Cal.App.5th 1174, 1179.) In interpreting the meaning of a statute, we attempt to discern the legislative intent underlying the statute. (*People v. Lawrence* (2000) 24 Cal.4th 219, 230.) Because statutory language generally provides the most reliable indicator of that intent, we look to the words of the statute itself, giving those words their usual and ordinary meaning and construing them in context. (*Ibid.*) If there is no ambiguity in a statute's words, their plain meaning governs and the Legislature is presumed to have intended what it said. (*Id.* at pp. 230-231.) The application of a statute to undisputed facts is also a question of law subject to our de novo review. (*Central Coast Forest Assn. v. Fish & Game Com.* (2018) 18 Cal.App.5th 1191, 1229.)

C

Mother asserts there is insufficient evidence to support the juvenile court's finding that her whereabouts were unknown at the time of the June 6, 2018, jurisdiction and disposition hearing. In particular, she argues her whereabouts were known because Department had the address of her Mexicali residence since the beginning of M.S.'s dependency proceeding and she (Mother) had appeared at both the August 7, 2017, detention hearing and December 11, 2017, jurisdiction and disposition hearing.

18

As stated above, section 361.5, subdivision (b)(1), provides that reunification services need not be provided to a parent when the court finds, by clear and convincing evidence, that "the whereabouts of the parent . . . are unknown."  Because the words of that statute are unambiguous and their usual and ordinary meaning is that the residence or other location of a parent is not known, the plain meaning of that statute's words governs and its words are therefore not subject to further interpretation.  (*People v. Lawrence*, *supra*, 24 Cal.4th at pp. 230-231.)

Based on our review of the record, we conclude there is insufficient evidence to support a finding that at the time of the June 6, 2018, jurisdiction and disposition hearing Mother's whereabouts were unknown within the meaning of section 361.5, subdivision (b)(1), as we interpret that statute.  First, while in the hospital after giving birth to M.S., Mother told a Department social worker that she was unemployed and lived with her parents and her three other children at her parents' Mexicali house and provided the social worker with the address of her Mexicali residence (i.e., the Mexicali Address).  The following day, Mother returned Department's phone call after it left a message on E.A.'s phone.[9]  Mother told Department she wanted to be present at M.S.'s detention hearing and would require transportation services.  On August 7, Mother appeared at M.S.'s detention hearing.  On the court's inquiry, Department confirmed that Mother had

---

[9]    At the hospital E.A. had given Department her phone number at which it could leave messages for Mother.

19

provided it with her parents' contact information, which presumably consisted of or included the Mexicali Address. Therefore, the evidence clearly shows that from the outset of M.S.'s dependency case Department knew Mother's whereabouts. Specifically, Department knew that Mother resided at the Mexicali Address with her parents and three other children.

Second, at the outset of M.S.'s case, Department contacted DIF by e-mail and asked for DIF's assistance in its investigation because Mother resided in Mexicali. Department gave DIF the Mexicali Address and information regarding Mother's children who resided with her there. Department also called the Mexican Consulate regarding the procedures for obtaining an assessment of Mother's home in Mexicali. Department was informed that it needed to fax a request for a socio-economic study to the Consulate, which request it would then forward to DIF. Department then faxed its request for a socio-economic study to the Mexican Consulate. Therefore, at the outset of M.S.'s dependency case, Department knew that Mother resided in Mexicali and requested the assistance of both DIF and the Mexican Consulate regarding its investigation of Mother's residence at the Mexicali Address.

Third, since the beginning of M.S.'s dependency case, Department consistently served Mother with notices of hearings in the case by mailing those notices to her at the Mexicali Address. In particular, Department served Mother with notice of the December 11, 2017, jurisdiction and disposition hearing by mailing a copy of the notice to the

20

Mexicali Address. Presumably in response to her receipt of such mailed notice, Mother appeared with her counsel at the December 11, 2017, jurisdiction and disposition hearing, but that hearing was continued until June 2018. Thereafter, Department served Mother twice with notices of the June 6, 2018, jurisdiction and disposition hearing by mailing copies of those notices to the Mexicali Address. Although Mother did not appear at that hearing, she was represented by counsel.

The above evidence shows that at all times from the beginning of M.S.'s dependency case in August 2017 through the June 6, 2018, jurisdiction and disposition hearing, Department knew that Mother resided at her parents' home at the Mexicali Address, requested assistance from DIF and the Mexican Consulate in its investigation of Mother's residence at the Mexicali Address, and mailed notices to her at the Mexicali Address. Department does not cite any evidence, and our review of the record on appeal does not show there is any evidence, that may have led Department to believe that Mother may have moved away from her residence at the Mexicali Address. Accordingly, absent any evidence supporting a reasonable inference that Mother had moved from her residence at the Mexicali Address, neither Department nor the juvenile court could reasonably conclude that Mother's whereabouts were unknown at the time of the June 6, 2018, jurisdiction and disposition hearing.

Furthermore, assuming arguendo Department had information suggesting that Mother may have moved away from her residence at the Mexicali Address or, because of

21

the lack of consistent contact with Mother, Department was otherwise uncertain whether she continued to reside at the Mexicali Address, Department presumably knew how to confirm whether Mother continued to reside at the Mexicali Address. As discussed above, at the outset of M.S.'s dependency proceeding, Department contacted both DIF and the Mexican Consulate for assistance in its investigation of Mother's home at the Mexicali Address. If at any time during the dependency proceeding Department had any doubt whether Mother continued to reside at the Mexicali Address, Department could have, and reasonably should have, contacted DIF and/or the Mexican Consulate for assistance in ascertaining whether Mother, in fact, continued to reside at the Mexicali Address. However, the record is devoid of evidence showing Department made any such request for assistance. In fact, the record does not show any attempts by Department to contact either DIF or the Mexican Consulate after its initial contacts in August 2017. It was unreasonable for Department to not avail itself of the resources most likely able to ascertain Mother's whereabouts for the 10-month period leading up to the June 6, 2018, jurisdiction and disposition hearing and then claim at that hearing that Mother's whereabouts were unknown. We presume that if Department had exercised reasonable diligence in ascertaining Mother's whereabouts by requesting the assistance of DIF and the Mexican Consulate during that 10-month period, they could have, and would have, provided it with assistance. (Cf. *In re R.L.*, *supra*, 4 Cal.App.5th at pp. 133, 147-148 [agency exercised reasonable diligence in attempting to locate father because it, inter alia,

22

requested DIF assistance through international liaison and DIF social worker then went to mother's address in Mexico in effort to locate father]; *In re A.G.* (2017) 12 Cal.App.5th 994, 998 [agency requested that DIF conduct evaluation of father's home in Tijuana, Mexico, and provide him with parenting education and domestic violence prevention classes]; *In re Rosalinda C.* (1993) 16 Cal.App.4th 273, 276 [per agency's request through Mexican Consulate, DIF made unannounced home visit in Mexico and reported that child was in good condition].) Instead, Department unreasonably took no action whatsoever to obtain the assistance of DIF and the Mexican Consulate in ascertaining Mother's whereabouts and then, just two weeks before the June 6, 2018, jurisdiction and disposition hearing, made belated and ill-founded phone calls in a cursory attempt to locate Mother, presumably to support its new recommendation that Mother should be denied reunification services based on her unknown whereabouts under section 361.5, subdivision (b)(1).[10]

In support of its May 30, 2018, jurisdiction and disposition report, Department stated that it had made diligent efforts to maintain communication with Mother, "to no avail," and that Mother had been inconsistent in visitation with M.S. In support of its recommendation that the juvenile court deny reunification services to Mother pursuant to

---

[10] We likewise note that the record is devoid of any attempt by Department to contact DIF to arrange the provision of predisposition reunification services to Mother near her Mexicali, Mexico residence. (Cf. *In re A.G.*, *supra*, 12 Cal.App.5th at p. 998 [agency requested that DIF provide father with parenting education and domestic violence prevention classes in Tijuana, Mexico].)

section 361.5, subdivision (b)(1), based on her purported unknown whereabouts, Department, as discussed above, submitted Mejia's declaration in which she described various calls or "contacts" made in her search for Mother's whereabouts. On September 12, 2017, Mejia called a number found in a statewide database, but the unidentified female who answered stated the number was not Mother's current number and she did not have another number for Department to reach Mother. Thereafter, Mejia apparently did not make any other attempts to contact Mother until May 22, 2018, (i.e., eight months later and only two weeks before the June 6, 2018, jurisdiction and disposition hearing), when she called another telephone number and spoke to E.A., who identified herself as Mother's in-law. Although E.A. had seen Mother the day before and frequently saw her, E.A. did not have any contact information for Mother. On May 30 (one week before the June 6, 2018, jurisdiction and disposition hearing), Mejia called another telephone number, but was unable to leave a message. On May 30, Mejia "contacted" (which we presume means "called") the Imperial County jail and was informed that no one with Mother's name was in its custody. On May 30, Mejia also "contacted" (i.e., called) the Mexicali, Mexico jail, but received no response. On May 30, Mejia also "conducted a search" for Mother at three Mexicali, Mexico hospitals (again presumably by calling them) and was informed that no one with Mother's name was currently admitted or hospitalized at those hospitals. Based on those attempts to locate Mother, Mejia asserted on behalf of Department that it had exercised due diligence in attempting to locate

24

Mother.  At the June 6, 2018, jurisdiction and disposition hearing, the juvenile court, without any discussion of Mejia's declaration or other information regarding Mother's whereabouts, found, by clear and convincing evidence, that Department had exercised a reasonably diligent search to locate and contact Mother, but was unable to locate her, and that Mother's whereabouts were unknown.  The court declared M.S. a dependent of the court, removed her from parental custody, and placed her in Department's custody.  The court denied reunification services to Mother under section 361.5, subdivision (b)(1), because her whereabouts were unknown.

The evidence discussed above is insufficient to support a finding, by clear and convincing evidence, that at the time of the June 6, 2018, jurisdiction and disposition hearing Mother's whereabouts were unknown within the meaning of section 361.5, subdivision (b)(1).  Mejia's eight "contacts," or phone calls (seven of which were made just one or two weeks before the June 6, 2018, jurisdiction and disposition hearing), to numbers or locations for which Mejia apparently had no reasonable belief would result in a direct contact with Mother (e.g., calls to jails and hospitals) cannot, in the circumstances of this case, be considered a reasonably diligent search by Department because Mejia and Department "ignore[d] the most likely means of finding" Mother.  (*David B. v. Superior Court* (1994) 21 Cal.App.4th 1010, 1016.)  Specifically, the most likely means of finding Mother would have been for Mejia or another Department social worker to have requested DIF or a Mexican Consulate representative to go to Mother's

25

residence at the Mexicali Address to ascertain whether she continued to reside there. Because, as discussed above, Mother informed Department that she and her three other children resided at her parents' house at the Mexicali Address and the record is devoid of any evidence showing that Mother had, or may have, moved away from that residence, it was highly likely that Mother continued to reside at that address. Therefore, at some point during the 10-month period before the June 6, 2018, jurisdiction and disposition hearing Department should have requested assistance of DIF or the Mexican Consulate if it believed Mother had moved away from the Mexicali Address and her whereabouts had become unknown. However, Department did not do so. Rather, it waited until two weeks before the hearing to take any action to locate Mother and, even then, essentially made only cursory phone calls to local jails and hospitals.[11] Accordingly, there is insufficient evidence to support the court's findings that Department conducted a reasonably diligent search to locate Mother and that Mother's whereabouts were unknown within the meaning of section 361.5, subdivision (b)(1). (Cf. *In re David B. v. Superior Court*, *supra*, at p. 1016 [because department's investigation ignored "most likely means

---

[11] Because Mother was unemployed, had no income, resided with her parents, and did not give Department any phone number that belonged to her, we presume that Mother did not own a phone at the time of M.S.'s detention or thereafter. Department has not cited any case holding, nor can we conclude, that the lack of phone ownership by a parent or a phone number at which a parent can be contacted necessarily makes that parent's whereabouts unknown within the meaning of section 361.5, subdivision (b)(1), particularly when, as in this case, the parent previously has given the department or agency his or her residential address and presumably continues to reside there.

26

of finding" father, its search efforts were "woefully deficient" and did not support court's finding of reasonable diligence by department]; *In re Arlyne A.* (2000) 85 Cal.App.4th 591, 598-599 [contrary to department's declaration of due diligence, record showed department ignored most likely means of locating father].) Therefore, the court erred at the June 6, 2018, jurisdiction and disposition hearing by finding Mother's whereabouts were unknown and denying reunification services to Mother pursuant to section 361.5, subdivision (b)(1).[12]

To the extent Department also argues that Mother failed to remain in consistent contact with it and/or did not consistently visit M.S., those factors do not show that Mother's whereabouts were unknown within the meaning of section 361.5, subdivision (b)(1). Rather, those factors showed, at most, that Mother had not remained in regular contact with Department and M.S., which is not a ground for denying Mother reunification services under section 361.5, subdivision (b). Alternatively stated, we conclude those factors do not provide substantial evidence to support the court's finding

_____

[12] Because we conclude the court erred by denying reunification services to Mother pursuant to section 361.5, subdivision (b)(1), we need not, and do not, address Mother's alternative argument that, even if her whereabouts were unknown at the time of the June 6, 2018, jurisdiction and disposition hearing, her whereabouts became known within the six-month period thereafter and therefore she was entitled to reunification services pursuant to section 361.5, subdivision (d). Section 361.5, subdivision (d), provides: "If reunification services are not ordered pursuant to paragraph (1) of subdivision (b) and the whereabouts of a parent become known within six months of the out-of-home placement of the child, the court shall order the social worker to provide family reunification services in accordance with this subdivision."

that Mother's whereabouts were unknown under section 361.5, subdivision (b)(1), particularly when, as discussed above, Department was given the address of Mother's residence in Mexicali (i.e., the Mexicali Address) and failed to take reasonable actions to ascertain whether she continued to reside there at the time of the June 6, 2018, jurisdiction and disposition hearing. Department does not cite any case persuading us to reach a contrary conclusion.

## II

*Setting a Section 366.26 Hearing and Terminating Mother's Parental Rights*

Mother contends the juvenile court erred at the June 6, 2018, jurisdiction and disposition hearing by setting a section 366.26 hearing after denying reunification services to her under section 361.5, subdivision (b)(1), and thereafter terminating her parental rights at the section 366.26 hearing. Department concedes that the court erred by setting the section 366.26 hearing, but argues Mother forfeited any challenge to the court's setting of that hearing.

## A

As discussed above, reunification services may be denied to a parent if the juvenile court finds, by clear and convincing evidence, that one of the exceptions under section 361.5, subdivision (b), applies. Section 361.5, subdivision (f), provides that if the court denies reunification services pursuant to subdivision (b)(2), through (17) or subdivision (e)(1) of section 361.5, "it shall, at the dispositional hearing, . . . determine if

28

a hearing under Section 366.26 shall be set in order to determine whether adoption, guardianship, placement with a fit and willing relative, or another planned permanent living arrangement . . . is the most appropriate plan for the child . . . . If the court so determines, it shall conduct the hearing pursuant to Section 366.26 within 120 days after the dispositional hearing. . . ." (§ 361.5, subd. (f).) However, if reunification services are denied pursuant to section 361.5, subdivision (b)(1), section 361.5, subdivision (f), does not permit the court to set a section 366.26 hearing. (*In re Jonathan P.*, *supra*, 226 Cal.App.4th at p. 1257.) *In re Jonathan P.* stated: "[I]f the sole basis of denial of [reunification] services is the unknown whereabouts of the parent under section 361.5, subdivision (b)(1), the juvenile court must set a six-month review hearing. [Citation.]" (*Jonathan P*, *supra*, at p. 1257.)

Section 366.26, subdivision (c)(2), provides: "The court shall not terminate parental rights if: [¶] (A) At each hearing at which the court was required to consider reasonable efforts or services, the court has found that reasonable efforts were not made or that reasonable services were not offered or provided." *In re T.M.* (2009) 175 Cal.App.4th 1166 stated at page 1173: "Subdivision (c)(2)(A) of section 366.26 simply bars termination of parental rights when the parent has never been offered services because the parent's whereabouts were unknown or when the agency has not developed a plan or offered reasonable services even though the parent was available. Before termination of parental rights can occur, the law requires the court to find either that

29

services would have been futile or detrimental to the minor under any of the relevant subdivisions of section 361.5, with the obvious exception of subdivision (b)(1), or that the agency at least tried to reunite the family by making reasonable efforts or offering services to the parents. (§§ 361.21, subds. (e), (f), 366.22.)"[13]

B

At the June 6, 2018, jurisdiction and disposition hearing, the juvenile court denied reunification services to Mother pursuant to section 361.5, subdivision (b)(1), and then set a section 366.26 hearing for December 5, 2018, for implementation of a permanent plan for M.S. In so doing, the court erred. Because the court denied reunification services to Mother under section 361.5, subdivision (b)(1), it had no authority to set a section 366.26 hearing and instead should have set a six-month review hearing. (§ 361.5, subd. (f); *In re Jonathan P.*, *supra*, 226 Cal.App.4th at p. 1257.) Furthermore, by thereafter terminating Mother's parental rights at the section 366.26 hearing, the court

---

[13] We reject Department's assertion that because Mother was not "available" within the meaning of *In re T.M.*'s language quoted above, section 366.26, subdivision (c)(2)(A), does not apply and therefore the juvenile court properly terminated her parental rights. (*In re T.M.*, *supra*, 175 Cal.App.4th at p. 1173.) Furthermore, as discussed above, there is insufficient evidence to support a finding that Mother's whereabouts were unknown. Department failed to take the action most likely to ascertain her whereabouts (i.e., request DIF and/or the Mexican Consulate to visit the Mexicali Address and confirm whether Mother still resided there). Also, because Department continued to serve Mother with notices of hearings by mailing the notices to the Mexicali Address, which address Mother initially had given it, and Mother did not report any address change, Mother presumably was "available" at that address and could have been offered reasonable services at that address by mail and/or direct contact through DIF.

further erred because Mother had not been offered or provided reasonable reunification services and the court, as discussed above, erred by finding her whereabouts were unknown and it did not find that any other exception to providing services applied. (§ 366.26, subd. (c)(2)(A); *In re T.M.*, *supra*, 175 Cal.App.4th at pp. 1171-1173.)

C

Contrary to Department's assertion, we conclude Mother did not waive or forfeit her challenge to the court's error by failing to object below. An appellate court generally will not consider a challenge to a trial court's ruling if the aggrieved party could have, but did not, timely object in the trial court when its purported error could easily have been corrected. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293; *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 184, fn. 1.) However, "[a]pplication of the forfeiture rule is not automatic." (*In re C.M.* (2017) 15 Cal.App.5th 376, 385; cf. *Melinda K. v. Superior Court* (2004) 116 Cal.App.4th 1147, 1157-1158 [parent does not forfeit challenge to department's failure to meet its statutory obligation to provide adequate reunification services by not objecting below].) An appellate court has discretion to excuse forfeiture in cases involving important legal issues. (*Melinda K. v. Superior Court, supra,* at pp. 1157-1158.) Furthermore, "the lack of adherence to the California dependency scheme may have adverse implications for the child's permanency and stability, which are of paramount importance, and the parent's interest in the child, which is fundamental." (*In re Nikolas T.* (2013) 217 Cal.App.4th 1492, 1501.)

31

In this case, the record supports an inference that Mother's counsel did, in fact, object to the setting of the section 366.26 hearing at the June 6, 2018, jurisdiction and disposition hearing. After the court denied reunification services to Mother pursuant to section 361.5, subdivision (b)(1), it stated: "We'll schedule a selection [and] implementation hearing [i.e., a § 366.26 hearing] for Monday, October 8th at 8:30 in the morning." Mother's counsel then stated: "I don't think we can do that, Judge. I think we have to wait six months and then—because if they show up any time in that 6-month period, then they're entitled to services if the only reason we deny services is because their location is unknown." Accordingly, Mother's counsel effectively objected to the court's setting of a section 366.26 hearing.

To the extent Mother's counsel thereafter agreed with the court's setting of a section 366.26 hearing on a date six months later (i.e., December 5, 2018), we nevertheless decline to apply the forfeiture rule to preclude Mother from challenging the court's error in setting the section 366.26 hearing. Because Mother has a fundamental interest in M.S., which interest was wrongfully terminated at the section 366.26 hearing after the court's error in setting that hearing, this case presents an exceptional case in which the general forfeiture rule should not be applied. (*In re C.M.*, *supra*, 15 Cal.App.5th at p. 385; *In re Nikolas T.*, *supra*, 217 Cal.App.4th at p. 1501.) Furthermore, the court's errors in setting a section 366.26 hearing and thereafter terminating Mother's parental rights were not, as Department suggests, mere "procedural" mistakes that are

32

subject to forfeiture. *Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, cited by

Department, is factually and procedurally inapposite to this case and does not persuade us

to reach a contrary conclusion.

III

*Prejudicial Error*

Department asserts that we should affirm the juvenile court's orders because the

court's errors were harmless. We disagree that the court's errors are subject to harmless

error analysis and therefore reverse the June 6, 2018, and December 5, 2018, orders.

Assuming those errors are subject to harmless error analysis, we nevertheless conclude

that the court's errors in denying Mother reunification services pursuant to section 361.5,

subdivision (b)(1), setting the section 366.26 hearing, and terminating Mother's parental

rights were prejudicial.

A

In a juvenile dependency proceeding, a parent generally has a statutory right to

reunification services when his or her child is removed from the parent's custody at a

disposition hearing. (§ 361.5, subd. (a); *In re M.F.*, *supra*, 32 Cal.App.5th at p. 13; *In re

Jonathan P.*, *supra*, 226 Cal.App.4th at p. 1257.) Furthermore, "due process requires [a

parent] be offered reasonable reunification services before [his or] her parental rights can

be terminated." (*In re Daniel G.* (1994) 25 Cal.App.4th 1205, 1215.) A parent has a

fundamental constitutional due process right in the care, custody, and control of his or her

33

child.  (*R.H. v. Superior Court*, *supra*, 209 Cal.App.4th at p. 371.)  "A parent possesses a fundamental liberty interest in the care, custody and companionship of his or her child. (*Stanley v. Illinois* (1972) 405 U.S. 645, 651.)  The United States Supreme Court has held that the liberty interest in 'the Due Process Clause of the Fourteenth Amendment protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children.'  (*Troxel v. Granville* (2000) 530 U.S. 57, 66.)  'Our society does recognize an "essential" and "basic" presumptive right to retain the care, custody, management, and companionship of *one's own child*, free of intervention by the government.'  (*In re Keisha E.* (1993) 6 Cal.4th 68, 76.)  The parents' right to raise their children 'is a compelling one, ranked among the most basic of civil rights.'  (*In re Marilyn H.* (1993) 5 Cal.4th 295, 306.)  Thus, parents are entitled to a full complement of rights in dependency proceedings, including standing, appointment of counsel and reunification services.  [Citations.]"  (*R.H. v. Superior Court*, *supra*, at p. 371.)

In general, harmless error analysis applies in juvenile dependency proceedings even where the error violates constitutional rights.  (*In re J.P.* (2017) 15 Cal.App.5th 789, 798.)  However, harmless error analysis does not apply to *all* errors made in juvenile dependency proceedings.  For example, in *In re A.G.*, *supra*, 12 Cal.App.5th 994, we declined to apply harmless error analysis to an erroneous finding by the juvenile court that the agency provided or offered court-ordered reunification services.  (*Id*. at pp. 1004-1005.)  We explained:

34

"[T]he Legislature has created a statutory scheme with 'precise and demanding substantive requirements' which in part 'protect the legitimate interests of the parents.' [Citation.] Among those requirements is the provision of family reunification services to the child's mother and statutorily presumed father for a specified period of time. (§ 361.5, subd. (a).) The Legislature has mandated consequences for the failure to provide court-ordered reunification services to a parent. (See, e.g., §§ 366.21, subds. (e)(3), (g)(2), 366.22, subd. (a)(3), 366.26, subd. (c)(2).)" (*In re A.G.*, *supra*, 12 Cal.App.5th at pp. 1004-1005.)

Therefore, without applying any harmless error analysis, we concluded: "The remedy for the failure to provide court-ordered reunification services to a parent is to provide an additional period of reunification services to that parent *and* to make a finding on the record that reasonable services were not offered or provided to that parent." (*In re A.G.*, *supra*, 12 Cal.App.5th at p. 1005.) Because we believe the erroneous denial of reunification services pursuant to section 361.5, subdivision (b)(1), is analogous to the erroneous reasonable services finding in *In re A.G.*, we conclude that harmless error analysis does not apply to the court's erroneous denial of reunification services to Mother at the jurisdiction and disposition hearing, nor to the court's subsequent erroneous orders that were based thereon (i.e., the court's erroneous setting of a section 366.26 hearing and its erroneous termination of Mother's parental rights at the section 366.26 hearing). (*In re A.G.*, *supra*, at pp. 1004-1005.) Accordingly, we conclude those errors by the juvenile court must be reversed without conducting any harmless error analysis. (*Ibid.*)

B

Assuming arguendo that harmless error analysis applies to the juvenile court's errors in this case, we nevertheless conclude its errors were prejudicial. In determining whether an error is harmless in a juvenile dependency proceeding, we must decide whether the error caused a miscarriage of justice. (Cal. Const., art. VI, § 13; *In re James F.* (2008) 42 Cal.4th 901, 917.) Alternatively stated, we must decide whether it is reasonably probable the result would have been more favorable to the appellant but for the error. (*In re Celine R.* (2003) 31 Cal.4th 45, 59-60.)

In the circumstances of this case, we conclude the juvenile court's errors in denying reunification services to Mother pursuant to section 361.5, subdivision (b)(1), setting the section 366.26 hearing, and terminating Mother's parental rights at the section 366.26 hearing were not harmless. Because the court had an insufficient factual basis on which to deny reunification services to Mother pursuant to section 361.5, subdivision (b)(1), that error, along with its error in setting a section 366.26 hearing, ultimately resulted in the erroneous termination of her parental rights at the section 366.26 hearing. Mother was never afforded her statutory and constitutional rights to reunification services after M.S. was removed from her custody, and therefore the court had no basis on which to terminate her parental rights to M.S. (§ 366.26, subd. (c)(2)(A); *R.H. v. Superior Court*, *supra*, 209 Cal.App.4th at p. 371.) As in *In re T.M.*, *supra*, 175 Cal.App.4th 1166, in this case "[n]o opportunity to reunify was ever afforded [Mother] nor did she have an opportunity to challenge a request to deny her services under any subdivision of section

361.5 which would have supported termination of parental rights.  Reversal is required."
(*Id*. at p. 1173.)

On the record in this case, we cannot speculate whether Mother would have made progress toward reunification with M.S. if she had been provided with reunification services.  Because M.S. was removed from Mother's care shortly after her birth and Department did not contact Mother and DIF regarding referrals for, and the provision of, predisposition reunification services, Mother and M.S. were never given a reasonable opportunity through the provision of either predisposition or postdisposition reunification services to create a parent-child bond and potentially reunify.[14]  Furthermore, in determining harmless error, we consider the detrimental effect on both Mother and M.S. of the juvenile court's lack of statutory authority to set the section 366.26 hearing at the jurisdiction and disposition hearing and then terminate Mother's parental rights at the section 366.26 hearing, which errors permanently precluded Mother and M.S. from ever forming a parent-child bond and potentially reunifying.  (§§ 361.5, subd. (f), 366.26, subd. (c)(2)(A).)  In sum, we conclude the juvenile court's errors resulted in a miscarriage of justice that requires reversal of the June 6, 2018 and December 5, 2018 orders.  (Cal. Const., art. VI, § 13; *In re Celine R*., *supra*, 31 Cal.4th at pp. 59-60.)  Alternatively

---

[14]    We reject Department's assertion in its supplemental letter brief that "[M]other had been referred to a panoply of pre-dispositional services."  As stated above, the record does not show that Department made such referrals either in person or by mailing the referrals to Mother at the Mexicali Address or that Department had contacted DIF and arranged the provision of those services to Mother near her Mexicali, Mexico residence.

stated, we conclude it is reasonably probable Mother would have obtained a more favorable result had the juvenile court not so erred. (*In re Celine R.*, *supra*, at p. 60.) If the court had properly granted reunification services to Mother at the jurisdiction and disposition hearing, it would not have set a section 366.26 hearing at that hearing and no termination of parental rights at the section 366.26 hearing would have occurred. In *In re M.F.*, *supra*, 32 Cal.App.5th 1, we stated: "[W]here reasonable services have not been provided or offered to a parent, there is a substantial likelihood the juvenile court's finding the parent is not likely capable of safely resuming custody of his or her child may be erroneous." (*Id*. at p. 19.) Therefore, it is reasonably probable that if the court had not erred, Mother's parental rights to M.S. would not have been terminated at the section 366.26 hearing. (*Ibid*.)

Contrary to Department's apparent assertion, we cannot conclude that termination of Mother's parental rights at the section 366.26 hearing was necessarily in M.S.'s best interests and, based thereon, that the court's errors were harmless. (Cf. *In re J.P.*, *supra*, 15 Cal.App.5th at pp. 799-801 [appellate court must evaluate effect of error on child's best interest; error in failing to appoint counsel to represent mother in filing section 388 petition was prejudicial error].) During the reunification period, the focus is on preservation of the family if possible. (*Tracy J. v. Superior Court*, *supra*, 202 Cal.App.4th at p. 1423.) It is only after proper termination of reunification services that the focus becomes providing the child with a safe, permanent home. (*Ibid.*)

Accordingly, until Mother is provided or offered reasonable reunification services to which she is statutorily entitled and those services are thereafter properly terminated, both Mother and M.S.'s interests are in reunifying. (*Ibid*.) Furthermore, Mother and M.S. have an interest in each other's care and companionship. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 419.) Therefore, by erroneously denying Mother and M.S. an opportunity to reunify through the provision of reunification services and denying their interest in the care and companionship between a mother and daughter, the juvenile court prejudicially erred.

IV

*Remedy on Remand*

Because, as concluded above, the juvenile court reversibly erred by denying Mother reunification services pursuant to section 361.5, subdivision (b)(1), setting a section 366.26 hearing, and terminating Mother's parental rights at the section 366.26 hearing, we must address the issue of the appropriate remedy on remand of this matter. We have received and considered the supplemental letter briefs filed by the parties on the issue of the appropriate remedy for the juvenile court's errors.

When a juvenile court erroneously denies reunification services to a parent or erroneously finds that reasonable services were provided or offered to a parent, the usual remedy is to reverse the judgment or order and remand the matter with directions that the court order that the parent be provided with reasonable reunification services. (*In re*

*M.F.*, *supra*, 32 Cal.App.5th at p. 24 ["the remedy, generally, for failing to provide or offer reasonable services during the previous review period is to extend services for another review period"]; *T.J. v. Superior Court*, *supra*, 21 Cal.App.5th at p. 1256 [failure to provide reasonable services justifies remedy of extending services beyond 18 months]; *In re A.G.*, *supra*, 12 Cal.App.5th at p. 1005 ["remedy for the failure to provide court-ordered reunification services to a parent is to provide an additional period of reunification services"].) We discern no reason in the circumstances of this case to vary from that general rule. Because the juvenile court erroneously denied Mother her statutory right to reunification services, we conclude that on remand she must be provided with appropriate reasonable reunification services for at least the statutory minimum period. Section 361.5, subdivision (a)(1)(B), provides that in the case of a child under three years old at time of his or her removal, the court shall order reunification services for a period of six months from the date of the disposition hearing, but no longer than 12 months from the date the child entered foster care as defined in section 361.49. Accordingly, because M.S. was under three years old at the time she was removed from Mother's physical custody, we conclude Mother is entitled to reasonable reunification services for a minimum of six months after remand of this case. (§ 361.5, subd. (a)(1)(B).)

To the extent Department argues that Mother cannot be provided with reunification services on remand because section 361.5, subdivision (a)(1)(B), generally

40

imposes a maximum 12-month period for reunification services after M.S. entered foster care, as defined in section 361.49, we disagree.[15]  Although section 361.5, subdivision (a)(1)(B), provides that reunification services ordinarily cannot be extended beyond 12 months after M.S. entered foster care (i.e., 12 months after October 6, 2017, which date is October 6, 2018), that statute necessarily presumes that a parent is timely provided or offered reasonable reunification services to which he or she is entitled.  In cases in which a parent is not timely provided or offered reasonable reunification services and no exception to the parent's right to reunification services applies, the statutory and constitutional interests of the parent and child in reunification if possible prevails over that general 12-month limitation for reunification services.  In *In re M.F.*, *supra*, 32 Cal.App.5th at page 23, we stated:  "[T]he juvenile court may extend the reunification period past the 18-month review date where the Agency did not provide or offer reasonable services to a parent of a child who was under three years of age at the time of removal."  Similarly, *Mark N. v. Superior Court* (1998) 60 Cal.App.4th 996, 1016, stated

---

15     Section 361.49 provides that a child is deemed to have entered foster care on the *earlier* of the date of the jurisdiction hearing or the date that is 60 days after the child is initially removed from the physical custody of his or her parent.  In this case, M.S.'s jurisdiction and disposition hearing was held on June 6, 2018.  The date M.S. entered foster care within the meaning of section 361.49 is 60 days after her initial removal from Mother's physical custody.  Because the juvenile court removed M.S. from Mother's physical custody at the August 7, 2017 detention hearing, we conclude that the date M.S. entered foster care is 60 days thereafter, or October 6, 2017.  (§ 361.49.)  Because that date is earlier than June 6, 2018 (the date of M.S.'s jurisdiction and disposition hearing), M.S. is deemed to have entered foster care within the meaning of section 361.49 on October 6, 2017.

that the "Legislature never intended a strict enforcement of the 18-month limit to override all other concerns including preservation of the family when appropriate." In *In re Daniel G.*, *supra*, 25 Cal.App.4th 1205, the court stated at pages 1213 to 1214: "We find nothing in the legislative intent or the specific language of section 366.22 or 366.26 which prohibits the court from extending the period for reunification services beyond 18 months from the child's detention where the agency . . . failed to make a reasonable effort to provide those services." (See also, *In re A.G.*, *supra*, 12 Cal.App.5th at p. 1005 ["The remedy for the failure to provide court-ordered reunification services to a parent is to provide an additional period of reunification services to that parent."]; *In re David D.* (1994) 28 Cal.App.4th 941, 955-956 [reversing termination of parental rights and directing on remand that parent receive additional six months of reunification services]; *In re Dino E.* (1992) 6 Cal.App.4th 1768, 1778 ["Where no reunification plan is in place, . . . a strict enforcement of the time line does not provide the opportunity to reunite the family. We do not believe that such a result was intended by the Legislature."].)

We further note that section 361.5, subdivision (a)(1)(B)'s limitation on the maximum period for reunification services can be extended to 18 or 24 months after a child's removal if, inter alia, the court finds at a child's permanency hearing or permanency review hearing that reasonable services have not been provided to the parent. (§ 361.5, subd. (a)(3)(A), (a)(4)(A); *T.J. v. Superior Court*, *supra*, 21 Cal.App.5th at pp. 1251-1258; *Tracy J. v. Superior Court*, *supra*, 202 Cal.App.4th at p. 1428; *In re*

42

*Daniel G.*, *supra*, 25 Cal.App.4th at pp. 1210-1217.) In the circumstances of this case, it is clear that even the exceptional 24-month maximum period for reunification services under section 361.5, subdivision (a)(4)(A), has now passed. Specifically, because of the 10-month delay until the June 6, 2018, jurisdiction and disposition hearing at which the court erroneously denied reunification services to Mother, the additional six-month period until the December 5, 2018, section 366.26 hearing at which the court erroneously terminated Mother's parental rights, and the delay inherent in our consideration of Mother's appeal and issuance of this opinion, the provision to Mother of six months of reunification services on remand of this case will necessarily exceed section 361.5, subdivision (a)(4)(A)'s 24-month maximum period for extension of reunification services. Nevertheless, we conclude that Mother and M.S.'s interest in reunification and the care and the companionship between a mother and daughter and Mother's fundamental constitutional due process right in the care, companionship, and custody of M.S., as discussed above, must prevail over that statutory time limit in this case where Mother has been erroneously denied reunification services and the opportunity to reunify with M.S. and through delay, whether reasonable or not, that statutory maximum period for reunification services is exceeded. (*In re Jasmon O.*, *supra*, 8 Cal.4th at p. 419 [parent and child have interest in each other's care and companionship]; *Tracy J. v. Superior Court*, *supra*, 202 Cal.App.4th at p. 1423 [until reunification services are terminated, family reunification is the goal]; *R.H. v. Superior Court*, *supra*, 209

43

Cal.App.4th at p. 371 [parent has fundamental liberty interest under due process clause of 14th Amendment to United States Constitution in care, custody, and companionship of his or her child]; *In re Daniel G.*, *supra*, 25 Cal.App.4th at p. 1215 ["due process requires [a parent] be offered reasonable reunification services before [his or] her parental rights can be terminated"]; *Troxel v. Granville*, *supra*, 530 U.S. at p. 66; *Stanley v. Illinois*, *supra*, 405 U.S. at p. 651.)  Accordingly, we conclude Mother is entitled on remand to a minimum of six months of reasonable reunification services notwithstanding the provisions of section 361.5, subdivision (a)(1)(B), (a)(3)(A), or (a)(4)(A) or any other statutory limit on the period for provision of reunification services.  (Cf. *Tracy J. v. Superior Court*, *supra*, at pp. 1419, 1428 [child was removed shortly after his January 2010 birth; our January 2012 opinion directed juvenile court on remand to continue 18-month review hearing for six months and order agency to provide parents with six additional months of reunification services, thereby exceeding 24-month statutory limit on period for reunification services and implicitly concluding § 361.5, subd. (a)(4)(A)'s time limitation does not apply where reasonable reunification services are not provided or offered and parental rights are erroneously terminated].)

If we were to instead adopt Department's position and rigidly interpret statutory limits on the period for provision of reunification services despite a court's erroneous denial of reasonable reunification services to parents, that interpretation could have adverse consequences not intended by the Legislature.  For example, such an

44

interpretation "could . . . tend to create an incentive for supervising agencies to avoid their statutory obligations to provide services by simply 'waiting things out' through delay." (*T.J. v. Superior Court*, *supra*, 21 Cal.App.5th at p. 1257.) We, like the court in *T.J.*, "do not view this as a reasonable reading of the statutory scheme."[16] (*Ibid*.) Therefore, we conclude that statutory limits on the period for reunification services do not apply in the circumstances of this case where the court erroneously denied reasonable reunification services to Mother and therefore she is entitled on remand to appropriate reasonable reunification services for a minimum period of six months.

## DISPOSITION

The orders issued by the juvenile court on June 6, 2018, and December 5, 2018, are reversed. The matter is remanded to the juvenile court with directions to: (1) vacate its finding that Mother's whereabouts are unknown; (2) vacate its setting of a section 366.26 hearing; (3) vacate its order terminating Mother's parental rights and selecting a permanent plan of adoption for M.S.; and (4) conduct a new jurisdiction and disposition hearing at which it shall, inter alia, order Department to provide Mother with a minimum of six months of reasonable reunification services.

---

16    To the extent *T.J. v. Superior Court*, *supra*, 21 Cal.App.5th at p. 1257, held that reunification services can never be ordered or provided beyond section 361.5, subdivision (a)(4)(A)'s 24-month limit, we disagree and decline to follow it.

HUFFMAN, Acting P. J.

WE CONCUR:


IRION, J.


DATO, J.

Filed 10/30/19

CERTIFIED FOR PUBLICATION

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re M.S., a Person Coming Under the Juvenile Court Law | D075278 |
| IMPERIAL COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>       Plaintiff and Respondent,<br><br>       v.<br><br>T.S.,<br><br>       Defendant and Appellant. | (Imperial County<br>Super. Ct. No. JJP03850)<br><br>ORDER CERTIFYING OPINION FOR PUBLICATION |

THE COURT:

The opinion in this case filed October 11, 2019, was not certified for publication.

It appearing the opinion meets the standards for publication specified in California Rules

of Court, rule 8.1105(c), the request pursuant to rule 8.1120(a) for publication is

GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication

specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

HUFFMAN, Acting P. J.

Copies to:  All parties

2