Filed 3/22/21  In re S.M. CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| In re S.M., et al., Persons Coming Under the Juvenile Court Law. | |
| HUMBOLDT COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>TAMMY M.,<br><br>        Defendant and Appellant. | A160111<br><br>(Humboldt County Super. Ct. Nos. JV170264/ JV170265) |

Tammy M. (Mother) appeals from the juvenile court's orders granting Robert A.'s (Father) petitions under Welfare and Institutions Code section 388 and ordering Father's home to be the primary placement for minors S.M. and M.M. (together Minors).  Mother contends her due process rights were violated and the juvenile court abused its discretion when it held a hearing and granted Father's section 388 petitions in her absence.

We affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

Mother has three children, R.A. (born in 2008), S.M. (born in 2014), and M.M. (born in 2017).  In December 2017, the Humboldt County Department

1

of Health and Human Services (Department) initiated dependency proceedings for all three children due to Mother's mental health issues. Since early 2018, the children have been dependents of the court, and Mother has been receiving family maintenance services.

At the start of these proceedings, Father and Mother lived together with the children. Father has since moved out of the home, and the juvenile court has elevated him to presumed father of all three children.[1] In August 2019, the court ordered visitation for Father with each of the three children.

*Father Petitions for Placement of Minors*

On December 20, 2019, Father filed petitions under section 388[2] for S.M. and for M.M. seeking orders to "[r]emove the child from the care of the mother and place with the father." Father averred that he had not had any visits with M.M. and Mother "continue[d] to actively encourage" R.A. not to visit with him. A hearing on Father's section 388 petitions was scheduled for December 31, and Mother and her attorney were given notice of the hearing.

*Mother Fails to Appear at Hearing on Father's Section 388 Petitions*

On December 31, 2019, the scheduled hearing date for Father's section 388 petitions, Mother did not appear. County counsel told the court she was advised that Mother had taken the children to southern California. The children's attorney stated Mother was thwarting her efforts to meet with R.A. and Mother was alienating the children from Father. Mother's attorney did not know Mother's address and her attempts to contact Mother had been

---

[1] This is Mother's third appeal in this dependency matter. We will not restate the family history and prior procedural activity in these proceedings, all summarized in our prior opinions, *In re M.M.* (A157684, March 4, 2020) [nonpub. opn.] and *In re M.M.* (A159001, May 28, 2020) [nonpub. opn.].

[2] Undesignated statutory references in the factual and procedural background are to the Welfare and Institutions Code.

2

unsuccessful. The court stated that Mother had an obligation to be in contact with the Department and that a protective custody warrant could be sought if she was not present at the next court date. The hearing on Father's section 388 petitions was rescheduled for February 5, and R.A. was ordered to attend at the request of the children's attorney.

*Combined Hearing of Father's Petition and Family Maintenance Review is Continued Multiple Times*

A family maintenance review hearing was scheduled for late January 2020. At a pretrial hearing on Father's section 388 petitions, the court rescheduled the review hearing for February 5 to coincide with the hearing on the section 388 petitions. Mother was present at this pretrial hearing with her attorney, Jennifer Dixon, and there was no objection to the rescheduling.

At some point, Mother requested a restraining order against Father, and a hearing on the matter was scheduled for February 19 in family court. On February 5, the juvenile court continued the hearing on Father's section 388 petitions and family maintenance review so the matters could be heard together with Mother's restraining order request.

On February 24, the matters were continued to March 9 because county counsel was sick. Father's attorney reported that Mother was still not allowing visitation and requested the children be detained. The children's attorney asked to contest the family maintenance review hearing. Mother was present with her new attorney, Christina Allbright, who asked that the issue of detention be deferred.

On March 9, 2020, the hearing was continued to April 22 at 8:30 a.m., due to time constraints and by agreement of the parties. Mother was present at this hearing with her attorney Allbright.

*Department Report for Family Maintenance Review*

A Department status report prepared in February 2020 for the family maintenance review hearing reported as follows. Mother had "secured her own housing that is stable and safe for the children" and she had "been doing a good job caring for the children." The Department's "biggest concern" was Mother's "inability to follow the Court ordered visitation plan and the negative talk she has about [Father] to the children." Mother failed to follow the visitation orders "and just did whatever she wanted." She often failed to show up at the agreed-upon time and Father "made numerous police reports documenting the incidents." Mother had left the county with the children on vacation without written permission. She continued to refuse to allow Father any visits with M.M.

Due to Mother's negative influence, R.A. expressed strong dislike for Father. S.M., now five years old, was "starting to display behaviors of dislike towards" Father, which was "most likely the result of negative influence by the mother" and the fact Mother sent R.A. (11 years old) to attend the visits that were supposed to be between Father and S.M. only. The Department recommended counseling for the parents and children.

Mother and Father were attending coparenting counseling as provided in Mother's case plan, but they had made no progress. Mother was not attending counseling to address her mental health concerns and had not participated in a medication assessment (her case plan from July 2018 provided "mother will continue weekly therapy" and "complete a medication assessment"). Father was "trying to build his relationship with [R.A.] as they were very close prior to the opening of this [dependency] case," but R.A. said many times that he did not want to visit with Father.

The Department concluded that Mother's "behavior has been contributing to a form of parental alienation of the children against their presumed father" and that Father was "not capable of standing up to the mother or asserting his rights to parent his sons." The Department requested an expert on parent alienation to meet with the parents and the children separately to make recommendations for custody and further treatment for the family.

Hearing on Father's Petitions and Family Maintenance Review

On April 22, 2020, the juvenile court held the combined hearing on Father's section 388 petition, family maintenance review, and Mother's request for a restraining order. Due to the Covid-19 pandemic, the parties and attorneys appeared via videoconference. Mother did not appear.

At the outset, the juvenile court stated there had been discussion off the record during which Mother's attorney Allbright reported she had given Mother "the code to be on the Zoom call at this time." The court noted the hearing was scheduled to begin at 8:30, it was 9:30, and Mother was not present. Father was not present at that time either. His attorney, Ronald Gilleo, indicated Father was having "some difficulties connecting," Gilleo had been in contact with Father that morning, and he had Father's permission to appear on his behalf.

The court inquired about Mother, and her attorney stated, "I have been in e-mail contact with her prior to today and she objects to anything changing other than she wants the case closed."

The court asked, "And do you have any information as to why she's not appearing or not in contact with you today?" Allbright responded, "I do not. I will tell the Court that it was unclear with her about this proceeding to a hearing today, and that is my fault because I had not received information

5

about direct examination in writing as I had thought we would and that's what I told her that we would be getting information about."

At this point, Father appeared remotely. The court then dismissed Mother's request for a restraining order without prejudice because "this was the date to appear today and there was the ability for her to appear remotely."

Next, the court asked the parties what they thought "we should do today." The children's attorney, Daralyn Balden, stated that she was only addressing the review hearing and that Father's attorney had mentioned he might withdraw his section 388 petitions. Balden argued Mother had done everything she could to delay and refuse visitation with Father, and she requested the court order the primary residence for M.M. and S.M. to be Father's home with R.A. to stay with Mother. She believed R.A. had suffered "serious emotional damage" and S.M. was "getting to the irreparable stages about his thoughts about his father and that's not okay." Balden explained that she "spent the majority of the night awake about this case and thinking about all of the possibilities," and "That's all I can come up with now to protect these children. I don't want them to go into foster care. I think that would be devastating and right now this is the only solution that I see."

Father's attorney then said, "Your Honor, I could withdraw the 388s [i.e., section 388 petitions]. The issue isn't switching the legal [presumably referring to custody], it's about the relationship. And if the children are going to be primarily in the care of the father, then I don't think the 388s would be necessary and I could withdraw them and then we could move forward on just the family maintenance review." The court asked to hear from county counsel, and she stated, "I think we can proceed as counsel for the children

6

has requested, and I have no objection to the withdrawal of the 388s. I think that's fine." The court then asked for Allbright's position.

Mother's attorney responded, "We would object and I guess I'm a little confused by the withdrawal of the 388 because then we're just on for an FM review and I—I didn't get from the Department that they wanted to switch primary residence in their report. Obviously I have the most recent social worker notes, so just procedurally that is a little dicey.

"I would ask that if the Court were inclined to do that, that we get an updated report to have the social worker review the video from the father if he doesn't go out there directly, and for us to find out some more information about the cousin."[3] She continued, "My client received a code this morning for this Zoom. Prior to that we had been having discussions and she objected. I thought that we were going to be getting some information about how to do some direct exam, so that's my fault."

"I would note that the social worker indicated in his notes that he believes both parents should receive a psych eval, and my client is desperately asking for that for the father. [¶] That's all."

Directly following Allbright's statements, the children's attorney addressed the court, "[I]f the Court is inclined to move [M.M.] and [S.M.] to the father, . . . I'm asking for mother's visits with those two to be strictly supervised because I have a fear that she will abscond with all of the children as she did—as it's believed that she did in December."[4]

---

[3] The reference to "cousin" is not clear from the appellate briefs or our review of the record.

[4] Here, Allbright commented that Mother did not think she absconded in the past. "She went to visit family."

Father's attorney stated he would submit on the issue of a psychological evaluation of Father, although "This isn't really a mental health issue on his end, this is just a frustration in dealing with the mother and her continual disobedience of court order."

County counsel submitted the matters without argument.

The court then granted Father's section 388 petitions. The court explained: "This has been a difficult case. The real issue to a large extent is that if the mom is not the one calling the shots, she simply just has historically disengaged; always has a reason for something, but we can't seem to make this case be moving along even though resources were committed to allowing for co-parenting. [¶] . . . [¶] . . .

"The sad part about it—and it's talked about in the literature in family law cases with parental alienation and what to do, that really as a last resort you do this kind of thing that's being asked today, but I absolutely think that there's no other option to take place in the case and that hopefully then mother will engage more fully and in a positive way. [¶] I think all of the children need to have counseling to support them through all of this process. Father is going to need to have support in assisting in behaviors."

The court made clear that it was placing Minors with Father based on Father's successful section 388 petitions and *not* as a result of a family maintenance review hearing. "[Father] is the one asking [for placement] since mother is not complying with the Court's orders, that the change is needed, and so the Court is . . . going to go ahead and grant the 388s, making father's home the primary placement and that visitation at least during the transition with mother be supervised to make sure that she is engaged in the process and not doing anything that would be counter-productive." "[I]t is both in the children's best interest and there has been the continuing change

8

of circumstance of the mother not engaging fully in the visitation with father."

Mother timely appealed the court's section 388 orders.

# DISCUSSION

Mother contends (1) her due process rights were violated when the court conducted the April 22 hearing by video conference in her absence and without prior notice that the Department was changing its recommendation as to placement; (2) the juvenile court abused its discretion by denying Mother's implied request for a continuance; and (3) the juvenile court abused its discretion in granting Father's section 388 petitions.

A. *Notice Claims*

    1. <u>Due Process</u>

There is no question Mother had actual notice that a hearing on Father's section 388 petitions, a contested family maintenance review, and her own request for a restraining order would take place on April 22, 2020. Mother was present with her attorney when the juvenile court scheduled the matters. Instead, Mother contends her due process rights were violated because "there is no indication in the record" that either the juvenile court or the Department gave her notice "that the hearing would take place by Zoom call and how she could attend."

The Department responds that Mother's contention is forfeited. We agree.

" 'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court. [Citations.] Forfeiture . . . applies in juvenile dependency litigation and is intended to prevent a party from standing by silently until the conclusion of the proceedings.' [Citation.] A party may not assert theories on appeal which

9

were not raised in the trial court." (*In re C.M.* (2017) 15 Cal.App.5th 376, 385.) The forfeiture rule applies to constitutional challenges. (*In re M.H.* (2016) 1 Cal.App.5th 699, 713.)

Mother does not address forfeiture in her reply. Forfeiture is not automatic, but an "appellate court's discretion to excuse forfeiture should be exercised rarely and only in cases presenting an important legal issue. [Citations.] Although an appellate court's discretion to consider forfeited claims extends to dependency cases [citations], the discretion must be exercised with special care in such matters." (*In re S.B.* (2004) 32 Cal.4th 1287, 1293.)

We see no reason to exercise our discretion to consider Mother's forfeited due process claim. Mother concedes that her attorney provided her the code to participate in the Zoom call for the April 22 hearing on the morning of the hearing. The Department points out there is no evidence in the record suggesting Mother "was precluded, obstructed, or otherwise hindered from attending the hearing remotely, even if the Zoom call-in information was not provided to her until the morning of the hearing." Mother's attorney told the court she did not know why Mother failed to appear and indicated at the beginning of the hearing that Mother was not in contact with her that day. Given that the attorneys and Father were able to attend the April 22 hearing by Zoom, there must have been some prior communication between the court and the parties on how the hearing was to be conducted (which communication does not appear to be in the appellate record). Had Mother's attorney objected to the notice Mother was given, it is possible the Department or the court could have responded with evidence showing Mother was given more specific notice of how the videoconference

10

would be conducted. In any event, the facts of this case do not present an important legal issue for which we would excuse forfeiture.

Mother also argues her due process rights were violated because her own attorney told her that the April 22 hearing "was simply to address the question of how direct examination would be conducted, with the implication that [Mother's] appearance was not necessary." Nothing in the record, however, shows that Mother's attorney told her client that her attendance at the hearing was not necessary. Allbright told the court at the beginning of the hearing that she *did not know* why Mother was not present at the hearing by videoconference call. Her subsequent comment that Mother was "unclear" "about this proceeding to a hearing today" because Allbright told Mother that she thought they would be getting information about direct examination appears to be no more than Allbright's speculation as to why Mother was not in attendance. As Mother's advocate, Allbright attempted to present Mother's absence in the best possible light, but Allbright never said that she told Mother her attendance at the April 22 hearing was not necessary. These facts do not suggest a due process violation. We note that Mother makes no claim that Allbright provided ineffective assistance of counsel in telling her the April 22 hearing would address how direct examination would be conducted.

Finally, Mother asserts that the claimed notice error in this case was structural error. Notice errors in dependency proceedings are not necessarily structural error. (See *In re James F.* (2008) 42 Cal.4th 901, 915–916, 918 ["question[ing] whether the structural error doctrine that has been established for certain errors in criminal proceedings should be imported wholesale, or unthinkingly, into the quite different context of dependency cases" and observing, "If the outcome of a proceeding has not been affected,

11

denial of a right to notice and a hearing may be deemed harmless and reversal is not required"].)

Mother had actual notice of the date and purpose of the hearing, her attorney gave her the code to call the court by Zoom, and there is no argument or evidence that Mother lacked the ability to appear at the hearing. Under these circumstances, we cannot conclude that reversal is required as a matter of structural error.

2. The Department's Recommendation

Next, Mother argues the Department violated the notice requirements of section 292 by failing to give her notice that it changed its position for the family maintenance review hearing from recommending no change in placement to recommending placing Minors with Father.[5] We disagree with the premise of Mother's argument.

In January 2020, the Department sent Mother notice of the upcoming family maintenance review hearing. The notice stated that the Department recommended no change in orders, services, placement, custody, or status. Mother claims the Department changed its recommendation at the April 22 hearing when county counsel said, "I think we can proceed as counsel for the children has requested, and I have no objection to the withdrawal of the 388s. I think that's fine."

The discussion in which county counsel made this statement began with the trial court asking the parties how they wanted to proceed with the hearing *procedurally*, specifically, whether they wanted to argue the section

---

[5] Section 292 requires notice of family maintenance review hearings to be given to the mother and presumed father and requires the notice to include "a statement regarding the nature of the hearing to be held and any change in the custody or status of the child being recommended by the supervising agency." (§ 292, subds. (a) and (d).)

388 petitions and continue the family maintenance review to another date. The court stated, "My suggestion . . . is we proceed on the [section] 388 [petitions] and ask the matter to go back to the Department for an updated report as to any kind of—what the report should be since the status review report was back in February. So I guess I'll leave it to you guys as to what you think we should do today."

In response, the children's attorney Balden indicated Father might withdraw his petitions and suggested proceeding with the family maintenance review hearing; she advocated for placing Minors with Father. Father's attorney stated he could withdraw the petitions if the matter of placement could be addressed in the review hearing. The court then asked for county counsel's position, and she agreed to proceed as Balden requested.

In this context, county counsel's statement showed concurrence with Balden's suggestion that the court conduct the family maintenance review at that day's hearing. It is not apparent that county counsel also intended to announce a change in the Department's recommendation. County counsel did not argue in favor of placing Minors with Father, nor did she state that the Department recommended such a placement. And, when asked later if there was anything she wanted to say, county counsel responded, "No. Thank you. Submit." We do not read the record as demonstrating a change in the Department's recommendation. Accordingly, Mother has not established a violation of the notice requirements of section 292. And, in any event, the juvenile court placed Minors with Father because it granted Father's section 388 petitions, not as part of a family maintenance review hearing.

13

B.      *Implied Request for a Continuance*

"Continuances are discouraged in dependency cases." (*In re Giovanni F.* (2010) 184 Cal.App.4th 594, 604.)  A court may grant a continuance "only upon a showing of good cause and only for that period of time shown to be necessary by the evidence presented at the hearing on the motion for the continuance." (§ 352, subd. (a)(2).)  "Whenever any continuance is granted, the facts proven which require the continuance shall be entered upon the minutes of the court." (*Ibid.*)

We review a juvenile court's denial of a continuance for abuse of discretion.  (*In re Giovanni F., supra,* 184 Cal.App.4th at p. 605.)

Mother argues her attorney Allbright impliedly requested a continuance when she said, "I would ask that if the Court were inclined to do that, that we get an updated report to have the social worker review the video from the father if he doesn't go out there directly, and for us to find out some more information about the cousin," and the juvenile court abused its discretion in denying it.

We will assume for the sake of argument that Allbright's statement amounted to an implied request for a continuance to obtain an updated report.  Mother argues an updated report was required because the latest status report was prepared two months before the April 22 hearing.  This rationale may be a reason to continue the family maintenance review hearing, but, as the Department posits, it does not apply to Father's section 388 petitions.  On appeal, Mother does not explain why the court should have continued the hearing on Father's petitions, which had been pending since December 2019.  We conclude it was well within the juvenile court's discretion to decide Father's section 388 petitions on the day the petitions

14

were scheduled to be tried rather than continuing the matter so the Department could prepare an updated report.

Minors were placed with Father because the court granted Father's petitions. Thus, even if the court should have continued the family maintenance review hearing for an updated report, this would not have affected the orders placing Minors with Father, and these are the orders that were appealed from. Mother has failed to show reversible error.

C.    *The Court's Decision Granting Father's Petitions*

Under section 388, a parent "may, upon grounds of change of circumstance or new evidence, petition the court . . . for a hearing to change, modify, or set aside any order of court previously made." (§ 388, subd. (a)(1).)

" 'The petitioner has the burden of showing by a preponderance of the evidence (1) that there is new evidence or a change of circumstances and (2) that the proposed modification would be in the best interests of the child.' " (*In re J.M.* (2020) 50 Cal.App.5th 833, 845.)

A juvenile court's ruling on a section 388 petition "should not be disturbed on appeal unless an abuse of discretion is clearly established. . . . 'The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318–319.)

We have no difficulty concluding the juvenile court did not abuse its discretion in granting Father's petitions. Mother argues there were no changed circumstances or new evidence shown as to S.M. This is not correct. The Department status review report prepared in February 2020 stated that Mother's disparagement of Father was harming S.M.'s relationship with

15

Father.  The Department reported S.M., who was five years old, was "*starting to display behaviors of dislike towards*" Father, which was "most likely the result of negative influence by the mother."  (Italics added.)  The oldest child R.A.'s antipathy toward Father may have been long-standing in the dependency proceedings, but S.M.'s behavior appeared to be new.  Moreover, contrary to Mother's claim, there was evidence she interfered with Father's visits with S.M.  The Department's service logs documented that, in February 2020, a social worker asked R.A. why he wanted to visit with Father on S.M.'s visitation day when he usually never wanted to visit with Father, and R.A. replied, "Mom says I have to protect my little brother."  Another service log entry showed a social worker believed only the youngest child M.M. had "managed to remain somewhat untainted by mother's steady parental alienation."

Mother also argues there was no evidence that changing placement was in Minor's best interests.  But the Department reported Mother's "behavior has been contributing to a form of parental alienation of the children against their presumed father."  The children's attorney argued that R.A. had suffered "serious emotional damage" and S.M. was "getting to the irreparable stages about his thoughts about his father."  On this record, it was within the juvenile court's discretion to find changing the Minors' placement from Mother's home to Father's home was in their best interests because it would help protect them from further parental alienation and emotional harm caused by Mother.

## DISPOSITION

The orders granting Father's section 388 petitions and placing S.M. and M.M. in Father's home are affirmed.

_____
                                        Miller, J.


WE CONCUR:


_____
Richman, Acting P.J.


_____
Stewart, J.


A160111, *In re S.M., et al./Humboldt County Department of Health and Human Services v. Tammy M.*