Filed 5/16/23  In re J.C. CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| In re J.C. et al., Persons Coming Under the Juvenile Court Law. | |
| ORANGE COUNTY SOCIAL SERVICES AGENCY, Plaintiff and Respondent, v. L.C., Defendant and Appellant. | G061905 (Super. Ct. Nos. 19DP1396, 19DP1396A, 19DP1397, 19DP1397A) O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Dennis J. Keough, Judge.  Affirmed.

Marisa L. D. Conroy, under appointment by the Court of Appeal, for Defendant and Appellant.

Leon J. Page, County Counsel, Karen L. Christensen and Jeannie Su, Deputy County Counsels, for Plaintiff and Respondent.

No appearance for the Minors.

\*          \*          \*

Defendant L.C. (mother) appeals from the juvenile court's order removing J.C. and M.C. (the children) from mother's physical custody. Mother contends the record was insufficient for the court to make the clear and convincing evidence finding necessary to justify the children's removal. We affirm the order without reaching the merits of mother's contention because we conclude mother forfeited her challenge by submitting on SSA's removal recommendation at the time of the dispositional hearing.

## FACTS

J.C. and M.C. are mother's children. M.C.'s biological father is deceased, and G.W. is the presumed father of J.C. Mother and G.W. have a long history together involving, among other things, drug and alcohol use, domestic violence and a Riverside County dependency case regarding the children. Prior to the Orange County Social Service Agency's (SSA) involvement in their lives, the children lived with mother and G.W., the latter of whom lived in the garage of mother's home.

*Protective custody warrant and original juvenile dependency petition*

In November 2019, SSA filed an application for a protective custody warrant to remove the children from mother's care based upon a history of domestic violence between mother and G.W., including a then recent altercation during which G.W. shoved a mirror into mother's face in front of the children. The application was granted, and the children were placed with their maternal grandmother. As a result of the same incident, G.W. was arrested and mother obtained a restraining order against him which protected both her and the children through October 2022.

2

Thereafter, SSA filed a juvenile dependency petition alleging a failure to protect and no provision of support. The associated detention report detailed mother and G.W.'s legal and personal struggles. Mother's history included anger management issues, domestic violence incidents involving prior partners, mental health issues for which she was taking medication, several misdemeanor convictions, a criminal protective order issued against mother and in favor of the principal at her children's primary school, a DUI conviction, and a domestic violence restraining order against mother which protected an unrelated person. G.W.'s history included a series of domestic violence restraining orders protecting mother and others, as well as several drug and alcohol related convictions. The petition also noted G.W. left California for the Midwest after the most recent domestic violence incident involving mother, with no plans to return, and mother changed the locks on her house.

Mother was initially cooperative with SSA, but her behavior quickly changed. She participated in personal empowerment classes to prevent domestic violence, an empowered parenting course, and some initial counseling sessions. She also participated in a few months of random drug testing, testing negative nine times. After those few months, however, mother expressed frustration with the slow progress of the case and stopped drug testing. She became hostile and inappropriate toward social workers, she struggled communicating with the maternal grandmother about her supervised visitation with the children, and she sent threatening messages to a social worker assigned to the case. The latter led the social worker to request and receive a restraining order against mother.

Throughout this time, the children told social workers they wanted to return to mother's care. Although they both articulated a concern about G.W.'s behavior, neither child expressed a fear of safety in mother's care or exhibited behavioral issues suggesting abuse.

3

In September 2020, the juvenile court held a jurisdiction and disposition hearing. Mother did not contest jurisdiction. Argument concerning disposition spanned multiple days due to mother interrupting the first day's proceedings. Ultimately, the court removed the children pursuant to Welfare and Institutions Code section 361, subdivision (c)(1)[1], and it ordered reunification services for mother which were to include, inter alia, drug testing, individual therapy and psychiatric services, and parenting classes.

*Mother's prior appeal*

Mother appealed from the 2020 order removing the children from her physical custody. A different panel of this Court reversed the order in an unpublished opinion, concluding there was insufficient evidence to support the removal. (*In re J.C. et al.* (Feb. 19, 2021, G059465) [nonpub. opn.].) Among other facts, the panel found the following significant: (1) G.W. moved out of state, with no intent to return; (2) mother obtained a 2-year restraining order against G.W., changed the locks on her home and expressed no interest in a continued relationship with him; (3) there was no evidence of continued contact between mother and G.W.; (4) there was no evidence of illicit drug use by mother and mother tested negative when she participated in random drug testing; and (5) mother's anger, as well as her inappropriate and deeply offensive behavior, was primarily directed at those whom she perceived to be standing between her and the children (e.g., social workers, the court), not at the children themselves. This court remanded the matter to the juvenile court for further proceedings based on the children and mother's then current situation.

---

[1] All further references are to the Welfare and Institutions Code unless otherwise indicated.

4

*Subsequent juvenile dependency petition*

Following remand, in May 2021, SSA filed a subsequent dependency petition (the subsequent petition) which alleged juvenile court jurisdiction based on the same grounds as the original petition—failure to protect and inability to provide regular care for the children due to mental illness and substance abuse. Included were many of the same facts contained in the original petition, along with new information regarding events that transpired after the 2020 disposition hearing. A subsequent detention report and a jurisdiction and disposition report, supplemented by eleven addenda, provided additional details.

In light of the subsequent petition, the children remained out of mother and G.W.'s custody. In December 2020, the children were placed in a confidential foster home. They continued monitored in-person visits with mother and monitored telephone visits with G.W. Over the course of the next 10 months, during which the court granted numerous continuance requests from the parties,[2] the children's feelings about returning to mother's care changed. M.C. told social workers he enjoyed living with the foster family, felt safe with them, and did not want to go back to living with mother. J.C. expressed uncertainty about going back with mother and said she liked the routine and structure provided by the foster family.

*Subsequent juvenile court proceedings*

In May 2022, the juvenile court held a jurisdictional hearing. Mother and G.W. submitted on the subsequent documents moved into evidence by SSA. The court found the allegations of the petition true by a preponderance of the evidence and based thereon asserted jurisdiction over the children pursuant to section 300, subdivision (b)(1).

_____

[2] Some of the continuances resulted from the juvenile court's or counsel's unavailability, while others resulted from mother or G.W. obtaining new counsel. Over the course of this dependency proceeding, mother has been represented by roughly one dozen attorneys, with replacement occurring each time one declared a conflict.

Five months later, in October 2022, the court held a combined disposition hearing on the subsequent petition and post-remand hearing concerning the original petition. Based on the additional facts in the subsequent documents, SSA recommended removal of the children from mother's and G.W.'s physical custody, continuation of the existing foster placement of the children, and provisions of family reunification services to mother and G.W. At the beginning of the hearing, counsel for SSA advised the court she "believe[d] the parents [were] submitting with respect to the removal request." When mother's counsel had the opportunity to speak, she stated: "Mother is going to submit as to the issue of placement. She does object to certain portions of the case plan." Her counsel then detailed mother's case plan objections. G.W.'s counsel similarly indicated G.W. was "submit[ting] to placement", but objecting to some of the case plan requirements.

After working through the party's objections to the case plan, the juvenile court declared the children dependents of the court. It found by clear and convincing evidence that section 361, subdivision (c)(1) applied and that "reasonable efforts [were] made to prevent or eliminate the need for the removal[.]" It ordered the existing placement of the children be maintained, approved a modified case plan, and set a review hearing for 6 months out.

Mother timely appealed.

**DISCUSSION**

Mother's sole argument on appeal is that the juvenile court's removal of the children is not supported by substantial evidence. On the record before us, we conclude mother forfeited such an argument by expressly submitting below to SSA's removal recommendation while concurrently objecting to aspects of the proposed case plan.[3]

---

[3] We requested supplemental briefing from the parties on the forfeiture issue because it was not addressed in their initial briefing.

6

"[A] reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court. [Citation.] The purpose of this rule is to encourage parties to bring errors to the attention of the trial court, so that they may be corrected. [Citation.]" (*In re S.B.* (2004) 32 Cal.4th 1287, 1293, footnote omitted.) This forfeiture rule applies with equal force in dependency matters. (*Ibid.*)

The line between forfeiture and preservation of an issue for appeal has become somewhat blurred in the dependency context because of the frequent and often ambiguous use of the term "submit" by juvenile court attorneys.

On one hand, if a parent (or a parent's counsel) "submits" on the social services report and any accompanying evidence offered by social services, a challenge to sufficiency of the evidence is preserved for appeal even if no argument is offered concerning social service's recommendation. (*In re Richard K.* (1994) 25 Cal.App.4th 580, 588-589 (*In re Richard K.*); *In re Tommy E.* (1992) 7 Cal.App.4th 1234, 1237-1239; *In re T.V.* (2013) 217 Cal.App.4th 126, 136.) Under such circumstances, the parent is acquiescing as to the state of the evidence only. (*In re Richard K., supra*, at p. 589.) The juvenile court is obligated to "weigh evidence, make appropriate evidentiary findings and apply relevant law to determine whether the case has been proved." (*Ibid.*)

A different situation presents itself when a parent "submits" on SSA's recommendation. Such affirmative action goes beyond simply agreeing the juvenile court may decide the issue before it on an uncontested record. It represents to the court agreement with the appropriateness of the recommendation. (*In re Richard K., supra*, 25 Cal.App.4th at p. 589.) The acquiescing parent may not then complain when the court makes the recommended order. (*Id.* at pp. 589-590; *Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 813.)

*In re Richard K.* is instructive. There, social services recommended the mother's children be removed from her custody based on a finding of substantial danger to their physical health. (*In re Richard K., supra*, at p. 587.) The mother's counsel told

7

the juvenile court she was submitting on the disposition recommendation, but she wished to put certain things on the record regarding the proposed reunification plan. (*Id*. at p. 588.) The court took action in accordance with the recommendation. (*Ibid*.) On appeal, the mother challenged the sufficiency of the evidence to support the children's removal. (*Id*. at p. 587.) The appellate court concluded the mother forfeited her right to contest the court's dispositional order in such a manner because she had "submit[ed] on the recommendation without introducing any evidence or offering any argument." (*Id*. at p. 590.)

Here, mother's counsel acted nearly identical to the mother's counsel in *In re Richard K*. After counsel for SSA advised the court she "believe[d] the parents [were] submitting with respect to the removal request", mother's counsel stated that "Mother [was] going to submit as to the issue of placement." Thereafter, she noted mother's objections to certain portions of the proposed case plan. That mother was agreeing to the appropriateness of removal is underscored by her counsel's closing comments to the court: "And I appreciate the county recognition as a side how much she has worked over the last two years. She's come a long way over these last two years things have really changed. Her visits are going well. She appreciates the help of the county, and she is really putting in the hard work, and we're hoping that she can do more. We'll see some movement toward the children coming back." Mother was present when all of these statements were made but did not voice any disagreement.

Mother notes the juvenile court held a combined hearing on the remanded original petition and the subsequent petition, and she "previously voiced her objection [to removal] and had not changed her position after [the first] appeal." But, the subsequent petition detailed events that occurred after the filing of the original petition and reports, and based thereon SSA provided a "new," albeit identical, removal recommendation. Mother does not point us to anywhere in the record where she voiced objection to that

8

subsequent removal recommendation based on the additional facts, and we have found none. Her representation, through counsel, was precisely the opposite.

Although we have discretion to excuse forfeiture, our Supreme Court has cautioned such discretion "should be exercised rarely and only in cases presenting an important legal issue." (*In re S.B., supra*, 32 Cal.4th at p. 1293.) This is not one of those rare cases. (C.f. *id*. at pp. 1293-1294 [exercise of discretion to consider merits despite forfeiture was appropriate because issue concerned delegation of authority about which appellate courts were split]; *In re Karla C.* (2010) 186 Cal.App.4th 1236, 1261-1267 [exercising discretion to consider merits despite forfeiture to address matter of first impression regarding placement of child with noncustodial parent outside the United States]; *In re C.M.* (2017) 15 Cal.App.5th 376, 385-386 [exercising discretion to consider merits despite forfeiture to address alleged use of incorrect legal standard and burden of proof by juvenile court].)

Notwithstanding our conclusion, we would be remiss if we did not mention how long the children have been kept in legal limbo due to the drawn-out nature of the proceedings below. They have been out of mother's care for two and one-half years with no assurance of their ultimate fate. Even the children's foster family expressed concern to SSA and the juvenile court about the impact of the seemingly endless uncertainty on the children.

"The goal of dependency proceedings . . . is to safeguard the welfare of California's children." (*In re Josiah Z.* (2005) 36 Cal.4th 664, 673.) "'There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current "home," . . . , especially when such uncertainty is prolonged.'" (*Id.* at p. 674, citing *Lehman v. Lycoming County Children's Services Agency* (1982) 458 U.S. 502, 513-514.) Thus, one of the primary dependency objectives is to provide "'*timely* permanency and stability.'" (*In re J.M.* (2020) 44 Cal.App.5th 707, 718, italics added.) Doing so "maximize[s] a child's opportunity to develop into a stable, well-adjusted

9

adult." (*Ibid.*)  We have no doubt SSA, parents' counsel and the juvenile court are capable of achieving that objective without sacrificing the children's safety or disregarding parents' constitutional rights.  Regrettably, it thus far has not been done in this case.

## DISPOSITION

The order is affirmed.


                                                    DELANEY, J.

WE CONCUR:


MOORE, ACTING P. J.


SANCHEZ, J.