Filed 3/21/23  In re J.P. CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| In re J.P. et al., Persons Coming Under the Juvenile Court Law. | B319550<br>(Los Angeles County Super. Ct. No. 22CCJP00011) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>JERAMY P.,<br><br>Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mary E. Kelly, Judge.  Affirmed.

Konrad S. Lee, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and David Michael Miller, Deputy County Counsel, for Plaintiff and Respondent.

———————————————

Jeramy P. (Father) appeals from the juvenile court's disposition order declaring his daughters, 11-year-old Je. P. (Jenna) and eight-year-old Ja. P. (Jaz), dependents of the court. Father's sole contention on appeal is that the juvenile court abused its discretion in requiring him to submit to a psychiatric evaluation by the Department of Mental Health. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *The Referral and Investigation*

In 2021 Jenna and Jaz lived with their mother, Crystal R. (Mother),[1] and the maternal grandmother, Melinda C., at Melinda's home. On November 12, 2021 the Los Angeles County Department of Children and Family Services (the Department) received a referral alleging Father went to Melinda's home in search of Mother, and when he was informed that Mother was not there, Father threatened to "'shoot' up the place where [M]other was at." The caller suspected Mother was using methamphetamine because she neglected the children by leaving them with Melinda without notice and staying out all night until early morning.

---

[1]     Mother is not a party to this appeal.

2

In the course of the Department's investigation, Melinda told the social worker that Father was a current methamphetamine user. She suspected Mother also was using methamphetamine. Melinda reported Mother often left the children at home to visit her friend Nora, and Mother would not return home until around six the next morning. Melinda added that Mother often got drunk and would curse and yell at the children in the morning when waking them up for school.

Melinda stated Father did not live at her home, but on multiple occasions, he came looking for Mother and the children. Melinda often had to call law enforcement because Father would be "aggressive and violent." The police call logs showed that from January to November 2021, Melinda contacted the police on 10 occasions to report that Father was refusing to leave her home or had made threats against her and Mother. On March 17 Melinda told police that Father had a backpack containing broken glass and wanted to leave with the children. Mother contacted the police the same day to report that Father was armed and kicking the door. On May 3 Melinda reported Father had attempted the prior day to break down her front door with a crowbar, and he had returned and was banging on the door demanding entry.[2] In addition, maternal grandfather, Richard R., called the police in February and October 2021 to report arguments Father had with Mother or Melinda at Melinda's home. On November 27, 2021 Father was arrested for assault with a deadly weapon and sentenced to jail time for violation of his probation.

---

[2] On December 28, 2021 the trial court issued a three-year civil harassment restraining order protecting Melinda from Father.

Mother acknowledged she had used methamphetamine in the past, but she denied any current use. She also admitted she drank alcohol to relax but denied daily drinking. Mother reported Father was homeless and used methamphetamine. Mother was not in a relationship with Father, but she allowed him to have sporadic visits with the children when he was sober. She also reported that Melinda used cocaine in the past and drank alcohol almost every day. According to Mother, when Melinda was drunk, she would be verbally aggressive toward Mother in the children's presence. On December 9, 2021 Mother tested positive for amphetamine and methamphetamine.

B.    *The Dependency Petition and Detention*

On January 3, 2022 the Department filed a dependency petition alleging Mother had a history of substance abuse and currently abused amphetamine, methamphetamine, and alcohol, which rendered her incapable of providing regular care of Jenna and Jaz. The petition also alleged Father had a history of substance abuse and currently abused methamphetamine, which rendered him incapable of providing regular care for the children. Further, Mother created a detrimental and endangering home environment by permitting Melinda, who had a history of cocaine and alcohol abuse, to reside with the children and have unlimited access to them.

 At the January 6, 2022 detention hearing, the juvenile court found Father was the presumed father of Jenna and Jaz. Father was not present because he was still in jail. The court released the children to Mother on the condition she reside with Melinda and submit to drug testing, with no positive or missed tests. At the February 8, 2022 arraignment hearing for Father,

4

the juvenile court granted Father monitored phone contact with the children three times per week for three hours each call.

On January 27, 2022 Mother tested positive for amphetamine and methamphetamine. Mother claimed she took a pill from a friend thinking it was ibuprofen. Mother insisted she had not used methamphetamine since her December 2021 relapse. On February 16 the juvenile court detained the children from Mother and Father and ordered the Department to assess Melinda's home for placement of the children.

C.    *The Jurisdiction and Disposition Report*

The February 7, 2022 jurisdiction and disposition report stated Mother told a dependency investigator that Father started using drugs "'off and on'" in 2015, but in 2021 he began using drugs daily. Starting in 2021 Father used crystal methamphetamine, crack cocaine, and alcohol, and he "huffed" computer cleaner. Mother reported Father's drug use impacted his mental health because he experienced visual and auditory hallucinations even when he was not under the influence of drugs. On one occasion in August 2021, Mother, Father, and the children were eating a meal when Father experienced visual hallucinations. Prior to Father's November 2021 arrest, Father would sleep at Mother's home twice a week. Mother reported that when Father woke up, he would talk to himself. Mother did not know if Father had been diagnosed with a mental health disorder. However, the paternal grandmother told Mother that Father was bipolar and had been prescribed medication. Mother did not provide the dependency investigator with the paternal grandmother's phone number because she did not want the paternal relatives to be involved or aware of the dependency case.

Jenna told the dependency investigator Father would often visit the family home and spend time with Jenna and Jaz. Jenna got along well with Father, and they would play board games or watch television together. Jaz reported she spoke with Father regularly on the telephone. Jenna and Jaz denied they had ever seen Father use drugs.

The dependency investigator attempted to interview Father by telephone on February 1, 2022, but he did not answer the phone. On February 3 Mother reported Father told her that he was aware that the dependency investigator had attempted to contact him, but he refused to participate in the phone call.

D.     *The Jurisdiction and Disposition Hearing*

Father waived his appearance for the March 8, 2022 jurisdiction and disposition hearing. Over the parents' objections, the juvenile court sustained the allegations in the petition as to Mother's and Father's drug use and Mother's conduct in allowing Melinda to reside with the children.

At the disposition hearing that followed, the court stated as to the Department's request for a psychiatric evaluation of Father, "the only concern that I have is, what is the basis for that since the court believes it's sustained a petition for substance abuse." The Department's attorney responded that the Department was requesting a psychiatric evaluation because Mother reported Father was "bipolar and supposed to take psychotropic medication in the jurisdictional report." The court replied, "That was a request for psychological assessment. So I will order the Department to send Father to the Department of Mental Health for an evaluation, psychiatric evaluation. If, in fact, Father does have a psychiatric component and he is self-

6

medicating, then I will order him to take all appropriate medications if it's ordered. And I will include that, take all prescribed medications. If, however, Father does not have a psychiatric diagnosis, that will be the end of it."

The court declared the children dependents of the court under section 300, former subdivision (b)(1),[3] and removed them from Mother's and Father's physical custody. The court ordered Mother and Father to attend a six-month drug and alcohol treatment program with aftercare, random or on-demand drug and alcohol testing, developmentally appropriate parenting classes, and individual counseling to address case issues supervised by a licensed therapist. The court order required Father to undergo a psychiatric evaluation and to take any prescribed medication. The court granted Mother and Father three monitored visits per week for three hours each visit.

Father timely appealed.[4]

_____

[3] In 2022 the Legislature amended section 300 (Stats. 2022, ch. 832, § 1), effective January 1, 2023, but the changes do not affect our analysis. Further statutory references are to the Welfare and Institutions Code.

[4] In his notice of appeal, Father identified the jurisdiction findings and disposition order as the orders appealed from. However, Father does not challenge the jurisdiction findings in his appellate briefs. He has therefore forfeited or abandoned the issue. (See *Tiernan v. Trustees of Cal. State University & Colleges* (1982) 33 Cal.3d 211, 216, fn. 4 [issue not raised on appeal "deemed waived"]; *Swain v. LaserAway Medical Group, Inc.* (2020) 57 Cal.App.5th 59, 72 [""'Issues not raised in an appellant's brief are [forfeited] or abandoned.'""]; *Eck v. City of Los Angeles* (2019) 41 Cal.App.5th 141, 146 [appellant forfeited or

7

## DISCUSSION

A.  *We Decline To Find Forfeiture*

The Department contends Father forfeited his challenge to the psychiatric evaluation order by failing to object to the order in the juvenile court. (See *In re S.B.* (2004) 32 Cal.4th 1287, 1293 ["a reviewing court ordinarily will not consider a challenge to a ruling if an objection could have been but was not made in the trial court"]; *In re Maria Q.* (2018) 28 Cal.App.5th 577, 590 ["'A party forfeits the right to claim error as grounds for reversal on appeal when he or she fails to raise the objection in the trial court.'"].) Father responds that his challenge on appeal goes to whether substantial evidence supports the disposition order, which is not forfeited by his failure to object. (See *In re J.N.* (2021) 62 Cal.App.5th 767, 777, fn. 5 ["a claim that the evidence is insufficient to support a disposition order in a dependency matter generally is not forfeited even if not raised below"]; *In re R.V.* (2012) 208 Cal.App.4th 837, 848 [father did not forfeit his challenge to disposition order requiring removal of minor based on insufficient evidence]; *In re Javier G.* (2006) 137 Cal.App.4th 453, 464 ["Even if the parent does not contest the state of the evidence, he or she preserves the right to challenge it as insufficient to support a particular legal conclusion."].)

Even where applicable, "application of the forfeiture rule is not automatic." (*In re S.B., supra*, 32 Cal.4th at p. 1293.) "But the appellate court's discretion to excuse forfeiture should be

abandoned challenge to order denying intervention by not addressing order in her appellate briefs].)

8

exercised rarely and only in cases presenting an important legal issue." (*Ibid*; accord, *In re C.M.* (2017) 15 Cal.App.5th 376, 385.) Here, Father is challenging both the sufficiency of the evidence supporting the disposition order, as well as whether the juvenile court abused its discretion in requiring that Father undergo a psychiatric evaluation in light of the evidence. We therefore exercise our discretion to consider Father's challenge.

B.     *Governing Law and Standard of Review*

       Section 362, subdivision (a), authorizes a juvenile court to "make any and all reasonable orders for the care, supervision, custody, conduct, maintenance, and support" of a dependent child. Further, the juvenile court may make any reasonable orders with respect to the parents of a dependent child "as the court deems necessary and proper to carry out this section." (§ 362, subd. (d).) "The problem that the juvenile court seeks to address need not be described in the sustained section 300 petition. [Citation.] In fact, there need not be a jurisdictional finding as to the particular parent upon whom the court imposes a dispositional order." (*In re Briana V.* (2015) 236 Cal.App.4th 297, 311; accord, *In re D.L.* (2018) 22 Cal.App.5th 1142, 1148 [juvenile court "had the authority to order a nonoffending parent to participate in services"].)

       We review the juvenile court's disposition order for an abuse of discretion. (*In re D.P.* (2020) 44 Cal.App.5th 1058, 1071.) "'The juvenile court has broad discretion to determine what would best serve and protect the child's interests and to fashion a dispositional order accordingly. On appeal, this determination cannot be reversed absent a clear abuse of discretion.'" (*Ibid*; accord, *In re K.T.* (2020) 49 Cal.App.5th 20, 25

9

["We review the juvenile court's disposition orders for an abuse of discretion [citation], and review for substantial evidence the findings of fact on which dispositional orders are based."].)  ""The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason.  When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.""" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319; accord, *In re Natalie A.* (2015) 243 Cal.App.4th 178, 186-187 ["In reviewing an order for abuse of discretion, we "'must consider all the evidence, draw all reasonable inferences, and resolve all evidentiary conflicts, in a light most favorable to the trial court's ruling.""].)

C.  *The Trial Court Did Not Abuse Its Discretion in Ordering a Psychiatric Evaluation of Father*

Father contends substantial evidence did not support the requirement he submit to a psychiatric evaluation, and therefore the juvenile court abused its discretion in ordering the evaluation, relying on *In re Drake M.* (2012) 211 Cal.App.4th 754, 770-771, disapproved on another ground in *In re D.P.* (2023) 14 Cal.5th 266, 283.  The Court of Appeal in *Drake M.* reversed a disposition order requiring the father to randomly test for drugs and to participate in drug counseling and parenting classes.  The Court of Appeal reasoned that absent evidence the father had a substance abuse problem (there was only evidence of medical marijuana use), there was no basis to order father to submit to drug testing and participate in drug counseling because the conditions would not address mother's substance abuse and mental illness.  (*Id*. at p. 770.)  The court similarly concluded as to parenting classes, "[T]here was nothing in the record showing

10

that father needed parenting courses.  To the contrary, the record shows that [the child] was well cared for by father.  The imposition of parenting courses cannot be 'based on a rote assumption that [father] could not be an effective single parent without parenting classes' and, where, as here, there is nothing in the record supporting an order for such courses, such an order is unjustified."  (*Ibid.*; see *In re Jasmin C.* (2003) 106 Cal.App.4th 177, 181-182 [reversing disposition order requiring mother to complete parenting classes where she was nonoffending parent, did not engage in any inappropriate behavior with children, and immediately restrained father during his isolated "rampage" in which he physically harmed the children].)

Unlike *In re Drake M.* and *In re Jasmin C.*, substantial evidence supports the order requiring Father to submit to a psychiatric evaluation.  Mother reported Father suffered visual and auditory hallucinations even when he was not under the influence of drugs, including in August 2021 when Father had visual hallucinations while having a meal with Mother and the children.  Mother also observed Father would wake up and talk to himself after sleeping over at her home.  Further, the paternal grandmother told Mother that Father was bipolar and had been prescribed medication.

Father argues Mother was not credible because she denied using methamphetamine after testing positive for the drug.  But it is not our role in reviewing the juvenile court's order to "reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts."  (*In re H.G.* (2006) 146 Cal.App.4th 1, 13; accord, *In re S.C.* (2006) 138 Cal.App.4th 396, 415.)  That the juvenile court found Mother's denial of her own drug use not

11

credible does not mean the court could not credit her report of Father's hallucinations, especially given that, according to the grandparents, Mother and Father loved each other. Father asserts further that any concerning behavior was attributable to his methamphetamine use and not any mental health issues. Although the court could have attributed Father's hallucinations and aggressive behavior to his methamphetamine use, the court also could reasonably could have inferred Father suffered from mental health issues.

Father also argues the juvenile court's order did not relate to the conditions that led to the dependency case, that is, Father's and Mother's substance abuse. However, as discussed, the juvenile court had broad discretion to order Father to submit to a psychiatric evaluation to protect the children's wellbeing even though the sustained petition did not allege Father had mental health issues. (*In re K.T., supra*, 49 Cal.App.5th at p. 25 ["The court's broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accord with this discretion, permits the court to formulate disposition orders to address parental deficiencies when necessary to protect and promote the child's welfare, even when that parental conduct did not give rise to the dependency proceedings."]; *In re Briana V., supra*, 236 Cal.App.4th at p. 311.) Accordingly, the juvenile court did not abuse its discretion in ordering Father to submit to a psychiatric evaluation in light of Father's visual and auditory hallucinations and his reported prior bipolar diagnosis.

## DISPOSITION

The disposition order is affirmed.


                                                  FEUER, J.

We concur:


PERLUSS, P. J.


SEGAL, J.